SUSAN J. STANTON-ABBOTT *vs.* JAMES STANTON-ABBOTT.

Suffolk.    May 5, 1977. — June 21, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Probate Court,* Modification of judgment.  *Due Process of Law,* Right to hearing.  *Divorce,* Alimony, Modification of judgment.

It was within the authority of a probate judge to include in a modified judgment increasing alimony payments a provision adjusting the alimony award at specified times according to changes in the retail price index and provision for converting American dollars into British pounds. [815-818]

LIBEL for divorce filed in the Probate Court for the county of Suffolk on October 16, 1968.

An amended petition for modification of judgment, filed on October 25, 1974, was heard by *Warner,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Paul P. Perocchi* for James Stanton-Abbott.

*Frank J. Teague (Richard G. Pichette* with him) for Susan J. Stanton-Abbott.

KAPLAN, J.    Judgment of divorce became effective between the parties in June, 1969. Both were then residents of the Commonwealth but were — and they still are — British citizens. The judgment, referring to and incorporating the terms of a separation agreement, provided for the wife a weekly alimony of $50 and other benefits.

By amended petition of October 25, 1974, the wife applied in the Probate Court for Suffolk County, pursuant to G. L. c. 208, § 37,[1] for a modification of the judgment,

---

[1] Section 37, as appearing in St. 1975, c. 400, § 38, provides: "After a judgment for alimony or an annual allowance for the wife or children, the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony or annual allowance and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

among other things to increase the alimony. According to the judge's findings of fact, conditions had changed very materially since the divorce. The wife, who now resided in England, had been severely injured in a car accident in December, 1967, in consequence of which she was now paralyzed from the waist down. Thereby her expenses were increased and she was disabled from securing employment in her former occupation as a secretary. When, in addition, inflation and other factors were considered, her weekly alimony was shown to be grossly inadequate. On the other hand, the husband, still residing in the Commonwealth, had substantial assets in this country and in England, the latter enhanced by a large bequest from his great aunt who died in 1971. He had been enabled to give up working full time in his profession as an architect. His present wife evidently did not require support from him, there were no children of either marriage, and he had no other dependants.

The judgment appealed from, modifying the earlier judgment, increases weekly alimony to an amount which, after deduction of taxes payable by the husband to the United States and the United Kingdom, equals $130 or the equivalent in pounds "at the conversion rate prevailing according to the Bank of England at the date each said payment is due." And, commencing with the year 1976, the weekly amount is to be increased semiannually by 50% of any percentage increase in the retail price index, as determined according to the index published by the statistical office of Her Majesty's government, for the six-month period ending on June 30 and December 31 of each successive year. (We omit certain administrative details regarding this adjustment.)

The husband, as appellant, makes no argument in this court that the modified disposition as to alimony is excessive or otherwise improvident. Rather he presses the contention that the judge was without authority to include in the modified judgment the provision regarding adjustment by the retail price index; and he takes similar exception, although with perhaps less ardor, to the provision

for converting dollars into pounds. The contention is formal in character. According to the husband, any change in the amount of alimony, whether paid in dollars or pounds (the husband has the election), which results from the application of either formula, would itself constitute a modification of the judgment (as modified), and this, he argues, would be unlawful: It would come about without the usually required demonstration by the party favorably affected that conditions had changed justifying the modification, and without procedural due process for the party adversely affected, who would not have been accorded an opportunity to be heard in opposition. Cf. *Coughlin* v. *Coughlin,* 312 Mass. 452, 456-457 (1942).

This argument confuses the application of a contingent or variable clause of a judgment to events as they occur, with the modification of a judgment. Judgments for alimony, child support, and so forth, are typically prospective in their operation. They are often written to accommodate to, and make provision for, future changes in the situation of the parties, such as the attainment by children of college age, or the remarriage of a spouse. So also such judgments may contain clauses relating alimony or other payments, in various ways, to the future earnings or profits or means of the obligated (or benefited) spouse. When time brings about the change of situation of the parties, or trips the contingency, or alters the basis of the calculation, as provided in the judgment, we should not regard the corresponding shift in the rate of payment as a modification of the judgment which requires new justification in another court proceeding. The judgment has remained the same although its variable terms, which were presumably argued and deliberated before they were approved, have produced results which in some sense are new.[2] A like analysis applies to the provisions of the judgment

---

[2] Cf. *Consumers Organization for Fair Energy Equality, Inc.* v. *Department of Pub. Utils.,* 368 Mass. 599 (1975) (discussion whether an adjustment of charges to consumers pursuant to a "fuel adjustment" clause in a rate schedule is a change in the rate schedule itself which might call for a rate proceeding with public hearings).

that are questioned in the present case, and we conclude that they were not beyond the powers of the probate judge. We add that if, through change of circumstances, these provisions should be thought to have become inappropriate or oppressive, it would be open to the party holding that opinion to apply to the lower court for a further modification of the judgment.

Of course it is a quite different question — substantive rather than formal — whether it was advisable on the merits, or compatible with the fundamental purposes of alimony,[3] or child support, or the like, to include a given contingent or variable provision in a divorce judgment. We do not reach any such question here, but note that the locations of the parties[4] and of the husband's resources presented a special case that well might have suggested the use of these self-executing formulas. Other considerations might apply to a case with more parochial contacts.

The distinction between the formal and the substantive perhaps has not always been observed (cf. Annot., 75 A.L.R.3d 493 [1977]), and in any event decision may be affected by local statute or practice. The husband cites *Fitts* v. *Fitts*, 231 Ga. 528 (1973), where the court held invalid an award of alimony in a certain amount made subject to adjustment biennially by reference to changes in the consumer price index of the Federal Bureau of Labor Statistics. The result might have been conditioned by the particular statutory text in Georgia[5] as it applies to decrees embodying jury verdicts fixing alimony. Even so, two Justices, dissenting, thought the decision inconsistent with *Golden* v. *Golden*, 230 Ga. 867 (1973), upholding a decree on a jury verdict awarding an amount for

---

[3] See the discussion in C. Foote, R.J. Levy & F.E.A. Sander, Cases and Materials on Family Law 810-815 (2d ed. 1976).

[4] The wife might be seriously burdened by having to appear or be represented in the Probate Court here when seeking (or opposing) periodic changes in the rate of alimony payable.

[5] The Georgia cases cited refer to Ga. Code Ann. §§ 30-207, 30-221 (1969).

alimony and child support with provision for adjustment to the extent of 16⅔% of future increases or decreases of the husband's net compensation after taxes.[6] See *Kitchin* v. *Kitchin,* 216 Ga. 619 (1961). A more recent decision, *Newsome* v. *Newsome,* 237 Ga. 221 (1976), indicates that the court's wariness about some flexible arrangements may be related not only to the statutory language but also to the use of a jury and to a concern (which would be shared generally) about compromising the enforceability of these decrees through undue indefiniteness.[7]

The cited authorities do not impeach the views we have expressed, and the rescript will be

*Judgment affirmed.*

[6] The similarity between *Fitts* and *Golden* could be considered more formal than substantive.

[7] The *Newsome* case questioned on the merits and disapproved an award of weekly support for each child equal to 10% of the husband's gross weekly salary whatever that might be from time to time. (Cf. *Stanaway* v. *Stanaway,* 70 Mich. App. 294 [1976]; *Hagbloom* v. *Hagbloom,* 71 Mich. App. 257 [1976].)

*Ridge* v. *Ridge,* 542 P.2d 189 (Utah 1975), also cited by the husband, simply holds that a provision of a judgment "phasing out" the alimony obligation over a period of nine years was not supported by adequate evidence.