SARAH KIRTZ vs. WILLIAM KIRTZ.

Essex.   April 15, 1981. — June 24, 1981.

Present: BROWN, CUTTER, & GREANEY, JJ.

*Divorce,* Division of property, Child support, Alimony, Counsel fees.

The failure of a husband to disclose the value of various assets in a divorce
proceeding did not provide a basis for a subsequent modification of the
division of property award which had been made under G. L. c. 208,
§ 34, where all assets had been disclosed and there was no evidence of
fraud or misrepresentation and where the wife could have acquired and
presented evidence in the earlier proceeding as to the value of the assets.
[145-146]

A probate judge did not abuse his discretion in refusing to make a revised
support order retroactive to the date of the filing of a complaint seek-
ing modification of the original support order entered in a divorce pro-
ceeding.  [146-147]

In an action by a wife seeking modification of a support order entered
in a divorce proceeding, the judge did not abuse his discretion in refus-
ing to limit the wife, who had custody of the parties' three young
children, to purely "rehabilitative" alimony.  [147]

A probate judge's provision in a support order for an automatic increase
in alimony based on any upward change in the consumer price index
was reasonable and sensible.  [147]

Where a probate judge, in setting the fee to be paid to a wife's counsel
by her husband in the wife's action for modification of a support order
and a second division of property, may have afforded undue weight to
the rule that a second division of property is not authorized by G. L.
c. 208, § 34, except under limited conditions, which rule was not en-
tirely clear at the time the complaint was amended to request a rediv-
sion, the case was remanded for reconsideration of the wife's request
for counsel fees.  [147-148]

A husband was not entitled to an award of counsel fees from his wife's
estate in an action by the wife seeking modification of a support order,
which was granted, and a redivision of property, which was denied,
where the husband had engaged in highly ambiguous fiscal arrange-
ments with his father, had opposed reasonable increases in support pay-
ments for his former wife and children even though his own financial
condition had improved greatly, and the wife was, therefore, justified in
seeking both the relief given her and that denied her.  [148-149]

LIBEL for divorce filed in the Probate Court for the county of Essex on October 7, 1974.

A complaint for modification filed on October 6, 1976, was heard by *Pettoruto, J.*, on a master's report.

*George C. Deptula (Richard D. Clarey* with him) for the plaintiff.

*George F. Gormley & Alice A. Hanlon* for the defendant.

CUTTER, J.  The plaintiff (the wife) and the defendant (the husband) have three children aged fourteen, twelve, and ten.  The parents were granted on April 2, 1976, a decree nisi of divorce as of October 7, 1975, which became absolute by the terms of a judgment entered on April 8, 1976.

Prior to the divorce, a master was appointed to consider the issues of support and custody.  He recommended that the wife have custody of the children under arrangements no longer in dispute.  The master also recommended the husband's transfer to the wife of (a) the equity (about $43,500) in the marital domicil in Marblehead, and (b) listed stock worth about $14,850.  The known value (apart from Ohio family interests mentioned below) of the husband's assets, at the time of this first master's report, was about $120,000 plus one-half of the equity in the marital domicile.  In addition, the husband owned, together with other members of his family, interests in Ohio real estate and enterprises then listed as having an "uncertain" value.  The husband, prior to the divorce, had assigned to the wife, his interest in household furnishings and antiques appraised at $10,705.  The master recommended that the husband pay to the wife $260 a month for her support while she remained unmarried, and $440 a month for the support of the children.  These recommendations of the master were essentially adopted by the probate judge by a judgment of April 2, 1976.  He also awarded the wife $5,000 for the services and disbursements of her present counsel.  Following the judgment, the docket shows that an appeal was waived.

The master's report disclosed that, prior to the divorce, the Kirtz family for a time had lived in Europe where the husband was employed as a journalist. After 1968, the husband had conducted a seriously unprofitable newspaper business, possible only because of support from the husband's father (a resident of Ohio) amounting to about $300,000 for the son, his family, and the losing venture. The report also disclosed that, beginning in 1969, the son and his family "lived on a rather expensive scale," obviously made possible only by the husband's father, at a time when the husband received $18,500 a year as a university teacher plus some income from "free lance writing."

On October 6, 1976, the wife filed a complaint, later amended on October 14, 1977, seeking (a) an increase in the amount allowed to her "for her support and the support of the children including the assignment to her of a portion of" the husband's estate, (b) "a provision that payments increase with increases of cost of living," and (c) for her costs and attorneys' fees. The case was referred to the same master who had made the pre-divorce report.

The master reviewed at length the property transfers and support payments originally ordered, and the wife's further needs for support. He found that the then existing support orders of $700 per month in the aggregate were not adequate and that the payments should be increased if the husband's resources "have increased sufficiently to justify" an increase. He also found that the husband's teaching salary had been increased in a modest amount since the earlier report. A listed stock had nearly doubled in value and had been sold for the husband at a substantial profit. Real estate in Marblehead, the only remaining asset of the husband's unsuccessful newspaper venture, had been sold at "a gain of $23,000 over its [earlier] estimated value." One of the Ohio businesses (regarded as of "uncertain" value in the earlier report) had been sold for about $77,000. The proceeds of the sales had largely been placed in the hands of the husband's father under highly confusing and ambiguous arrangements. From these, some securities had been pur-

chased for the husband. Irrevocable trusts of about $25,000 each had been established for each of the couple's three children, under which income and principal were payable to the child in the sole discretion of the husband's brother who is trustee. The master wisely concluded that the husband's "financial situation [should] be treated as if the trust funds were under his control," because, so the master concluded, the husband "has only to ask his brother to use the trust funds for the children and it will be done." The master recommended denial of any further transfer of capital from the husband to the wife under G. L. c. 208, § 34, as then in effect, on the ground that the assignment of assets in the original divorce judgment precluded any further assignment.

The master's report (based on the hearings concluded on December 8, 1977) was filed on March 21, 1978. The report was adopted and objections to it were waived by both parties. Further hearings were held in 1979 before the probate judge who filed his findings on July 24, 1979. He concluded, after reviewing the wife's budget, that she then needed $740 each month for child support and $475 each month for her support, and that the husband's assets had risen sufficiently to justify a reasonable increase in the support order. He decided that the husband exercised "some indirect control in how . . . payments [from the trusts for the children] will be made." In view of the "extensive assignments of property by the" husband to the wife in the original divorce proceeding, he concluded that there was no basis for modifying the earlier property division awards. He expressly found that "[a]ll assets owned by the . . . [husband] were disclosed . . . in the original divorce proceeding. While some of the assets were later found to be worth more," he wrote, "I find no evidence of fraud or misrepresentation by the" husband.

The judge made note that the wife had "suffered a constant erosion of her support funds by inflation." To "help correct this harsh inequity," he directed the inclusion of a

cost of living clause in the modified judgment, limited as stated below.

A revised judgment, dated November 1, 1979, continued in effect the provisions of the judgment of April 2, 1976, with respect to the decree nisi, custody of the children, and visitation rights, except that the payment by the husband to the wife for child support was to be reduced by $175 while the children were with the husband for a month in the summer. Portions of the 1976 judgment with respect to transfers of property and counsel fees in the original divorce proceeding were stated to have "been fully satisfied." The support provisions were modified as already indicated, and there was inserted a cost of living provision, based upon changes in the Bureau of Labor Statistics Consumer Price Index and increases in the husband's taxable income, "whichever is the lesser." The husband was directed to pay to the wife $1,000 toward the compensation of her attorneys. From the revised judgment, both parties have appealed.

1. Counsel for the wife contends in effect that the husband's failure to disclose the *value* of his various Ohio assets and of the remaining property of his newspaper business caused her to refrain from pressing in the original proceeding for a more substantial allocation to her of property under G. L. c. 208, § 34. As to this, she must overcome the specific finding by the probate judge on the master's second report (and such other evidence as the probate judge received) that there was no evidence of the husband's fraud or misrepresentation and that "[a]ll assets . . . were disclosed . . . in the original . . . proceeding." Absent fraud, no further division of property under § 34 is now in order. See *Maze* v. *Mihalovich*, 7 Mass. App. Ct. 323, 324, 326 (1979); *Belsky* v. *Belsky*, 9 Mass. App. Ct. 852, 852-853 (1980). Compare *Hager* v. *Hager*, 6 Mass. App. Ct. 903, 904 (1978), *S.C., post* 887 (1981); *Demeter* v. *Demeter*, 9 Mass. App. Ct. 860 (1980, where affirmative misrepresentation was involved. Compare also *Foster* v. *Foster*, 10 Mass. App. Ct. 829, 830 (1980, division of prop-

erty in original divorce proceeding not final where judgment nisi was entered before effective date of amendments of § 34 by St. 1974, c. 565). The first master's report shows that no evidence was offered at the pre-divorce hearings before him as to the value of the husband's three principal family assets in Ohio, although the existence of these assets was disclosed. It was then open to counsel for the wife to take depositions as to their value if other information was inadequate. The value of the Marblehead real estate, then unsold, was a matter as to which the wife clearly could have presented expert testimony. The value of the husband's listed securities was a matter reported in the daily newspapers. The probate judge was not required to conclude, from the rapid rise shortly after the divorce judgment in the value of the husband's assets, that the husband was guilty of fraud or culpable nondisclosure, even if the revised principles, not applied but suggested in *Rosenberg* v. *Lipnick*, 377 Mass. 666, 670 et seq. (1979, dealing with an antenuptial agreement), are applicable to a divorce situation. We recognize that a different conclusion might have been permissible (see e.g. the *Hager* case, 6 Mass. App. Ct. at 903-904), but perceive no occasion for setting aside the conclusion of the probate judge based on the report of an experienced master and possibly other evidence (not now before us) heard by the judge himself. We note that the master took the view that even if G. L. c. 208, § 34, as then in effect, "did so permit, . . . [he] would not recommend a further division [of property] on the facts found by" him.

2. The wife contends that the probate judge should have made the new support order retroactive to the filing (October 6, 1976) of the complaint seeking a modification of the original support order. The record shows that during the post-divorce litigation, the wife received two increases in allowances, one in May, 1978, the other in February, 1979. There had also been set up (from funds regarded by the judge as those of the husband) a trust of $25,000 for each child. From each such trust, expenditures can be made for the child, at the discretion of the trustee. The probate

judge could reasonably give some weight, in deciding on the terms of a revised support order, to this provision made by the husband for the benefit of his children.[1]  These matters, among others, the probate judge could properly take into account in determining to what extent new support rates should be retroactive.  His discretion was exercised reasonably.

3. We perceive no reason for limiting this mother of three still very young children (one of whom is subject to psychiatric problems) to purely "rehabilitative" alimony.  Compare *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. 1, 15-17 (1979).  Her record of, and all aspects of her potential for, employment were fully considered by the master and the probate judge in setting the modified alimony figures.  Her failure to obtain more remunerative employment does not require any less favorable treatment than she received.

4. The provision for an automatic increase in alimony based on any upward change in the consumer price index (as limited on the revised judgment) is reasonable and sensible.  It is likely to reduce abrasive and expensive resort by the wife to further requests for modifications of the support orders.  See *Stanton-Abbott* v. *Stanton-Abbott*, 372 Mass. 814, 816 et seq. (1977).

5. The probate judge awarded $1,000 to the wife for her counsel's fees and disbursements.  Counsel had asked substantially more for a very considerable (although probably excessive) expenditure of time in the case.  The judge in awarding counsel fees to the wife gave consideration to various appropriate factors.  Among these was the circumstance that a large part of the time expended by her counsel was "in the effort [of] seeking a second property division."

---

[1] We need not decide now what, if any, further alimony or support orders (as in effect based on facts analogous to a change of circumstances) should be made requiring the husband to meet (if the proper trust's assets are not so used) at least any emergency, medical, or educational expenses of any of the children which it can now reasonably be expected will be met from the trust's assets by a trustee acting conscientiously and free from inappropriate influence of the husband.

The judge also found that the wife "pursued a reasonable and substantial issue in [seeking] her modification."

The circumstance that the husband's fiscal position improved so rapidly after the original divorce judgment reasonably could have led the wife's counsel to suspect fraud on the part of the husband. Moreover, it was by no means as clear on October 14, 1977, when the wife's modification complaint was amended, as it was when the revised judgment was entered on November 1, 1979, that a second division of property was not authorized by G. L. c. 208, § 34, after the 1974 amendments. *Hager* v. *Hager*, 6 Mass. App. Ct. at 903-904 (decided July 21, 1978), gave some support for asserting contentions, based upon possible fraud, which might lead to a revision of the division of property. We think that the probate judge, in setting the fee to be paid to the wife's counsel by the husband, may have afforded undue weight to what now seems to be the rule, viz., that no further division of property under § 34, once one division has taken place, will be allowed in the absence of fraud affecting the first division and perhaps for some applicable ground for relief from the judgment. Mass.R.Dom.Rel.P. 60(b)(1975). Upon remand, it will be open to the probate judge, upon seasonable motion of the wife's counsel, to reconsider summarily and on the present record the allowance to be made for the wife's counsel fees. A somewhat larger allowance would have been warranted (although not required) even applying the "strictly conservative principles" alluded to in *Hayden* v. *Hayden*, 326 Mass. 587, 596 (1950), and in *Pemberton* v. *Pemberton*, 9 Mass. App. Ct. 9, 16 (1980). See also *Zildjian* v. *Zildjian*, 8 Mass. App. Ct. at 17. The judge was correct in awarding no counsel fees to the husband from the wife's estate. The husband had engaged in highly ambiguous fiscal arrangements with his father, tending to make his assets hard for his former wife to reach, and had opposed, even after his own financial condition had improved greatly, reasonable increases in support payments for his former wife and his children, even asking that alimony to her be limited to amounts wholly

"rehabilitative." Not only would it be inappropriate to impose counsel fees upon a wife unable to pay them (see *Hano* v. *Hano,* 5 Mass. App. Ct. 639, 641-642 [1977]), but in many respects the wife in these proceedings was the successful party and was justified by the facts in seeking the relief which was given to her and in attempting to obtain the relief denied to her. The "basic factors of need and relative economic positions of the spouses" tend to support the probate judge's action in denying counsel fees to the husband. See *Goldman* v. *Roderiques,* 370 Mass. 435, 437-438 (1976).

6. The judgment is affirmed, subject to the opportunity (already mentioned) afforded to counsel for the wife to seek within twenty days of receipt of the rescript in the Probate Court reconsideration of the counsel fees to be ordered paid to the wife by the husband. Upon such reconsideration, a modest and reasonable increase in such fees, or no increase, may be awarded in the discretion of the probate judge. Costs of these appeals are to be paid by the husband.

*So ordered.*