JAMES M. MAILLET *vs.* LISA M. MAILLET.

No. 04-P-943.

Worcester. May 3, 2005. - October 5, 2005.

Present: DUFFLY, DREBEN, & GRAHAM, JJ.

*Divorce and Separation,* Relief from judgment.

This court remanded a divorce matter to the Probate and Family Court for further findings regarding evidence presented at a hearing on the wife's motion, pursuant to Mass.R.Dom.Rel.P. 60(b)(3) (1975), alleging that the husband had made material misrepresentations on his financial statement. [689-692]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on November 30, 2001.

A motion for relief from judgment, filed on August 12, 2003, was heard by *Joseph Lian, Jr.,* J.

*David P. Bodanza* for Lisa M. Maillet.

*Patrick R. Bunnell* for James M. Maillet.

DREBEN, J. Lisa M. Maillet (wife[1]) appeals from the denial of her motion, pursuant to Mass.R.Dom.Rel.P. 60(b)(3) (1975), to vacate and set aside a judgment of divorce as to all matters other than the dissolution of the marital relationship. She claims that James M. Maillet (husband) "made material misrepresentations on his financial statement filed on October 15, 2002, at the time of the entry of the judgment." The wife asserts that she did not discover these misrepresentations until May, 2003, when the husband asked her to sign Federal and State income tax returns for the 2002 calendar year. Because the husband's financial statement involves troublesome questions of compliance with the requirements of Supplemental Probate Court Rule

---

[1]For convenience we refer to the former wife as "wife" and the former husband as "husband."

401 (1997) (rule 401), and because the Probate Court judge in denying the motion may have relied too heavily on the access permitted the wife's counsel to the husband's accountant and his records, we remand for further findings.

Many of the basic facts are not in dispute. After fifteen years of marriage, the husband, on November 30, 2001, filed for divorce under G. L. c. 208, § 1B. The couple has two minor children, a son, born on May 10, 1997, and a daughter, born on May 26, 1999. The wife works part time, and her financial statement pursuant to rule 401 of October 15, 2002 listed her income, other than child support, as $200 per week. The husband is the sole owner of Cam Maillet & Son, Inc., a subchapter S corporation[2] (corporation), which listed its business activity in the proposed corporate tax return as "contracting" and its product as "residential homes."

On October 15, 2002, a date assigned for a pretrial conference, the parties exchanged rule 401 financial statements and entered into a separation agreement. A judgment of divorce entered the same day ordering "that the stipulation [agreement] attached hereto shall be incorporated, merged into and made a part of this Judgment, except as to the provisions [relating to property division] which shall survive independent of same."

The agreement, inter alia, provided for payments by the husband of child support of $250 a week.[3] The parties agreed that neither would pay alimony, and the wife waived "all right, title and interest she has or may have in and to the business or business assets, including the real estate, of the Husband, known as Cam Maillet & Son."[4]

---

[2] "Under Federal and State tax law, the earnings of [a subchapter S corporation] are treated as having been 'passed through' to their shareholders . . . (whether or not distributions were actually made), and those persons are responsible for the resulting tax obligations. See 26 U.S.C. §§ 701-761, 1361-1379." *Demoulas* v. *Demoulas Super Markets, Inc.,* 424 Mass. 501, 558 (1997).

[3] The agreement set forth that the children were to stay with the mother from Mondays at 7:00 A.M. until Thursdays at 5:00 P.M., and were to stay with the father from Thursdays at 5:00 P.M. to Mondays at 7:00 A.M.

[4] The agreement also contained the following clause: "The Husband and Wife represent and acknowledge that each has fully described his or her assets and liabilities to the other party to the best of his or her knowledge and abil-

The husband's rule 401 financial statement[5] for October 15, 2002, insofar as now relevant, was filled out as follows:

"2. <u>Gross Weekly Income from All Sources</u>

| | |
|---|---|
| a). Base pay from salary, wages | $ 800.00 |
| . . . | |
| d). Dividends — interest | $ 19.00 |
| . . . | |
| k). All other sources (include child support, alimony) | $ 0.00 |
| l). Total Gross Weekly Income (a through k) | $ 819.00" |

. . .

"10. <u>Assets</u>

. . .

| | |
|---|---|
| g). Other (such as — stocks, bonds, collections) CAM Maillet & Son, Inc. No estimated business value. Vehicles, equipment and other tools (Net) | $ 40,000" |

Two previously filed rule 401 financial statements of the husband dated May 29, 2002 and August 21, 2001 did not mention Cam Maillet & Son, Inc.[6]

In the spring of 2003, the husband asked for the wife's signature on proposed income tax returns for the 2002 calendar year, and also sent her a Form 1120S income tax return for the corporation for the same period. These documents were prepared by Ronald Leger, the husband's accountant. Leger also assisted the husband in preparing the rule 401 financial statement dated October 15, 2002.

The proposed tax returns stated that the husband had wages

ity, both orally and otherwise and by exchange of copies of current Mass. R. Dom. Rel. P. 401 Financial Statements, duplicate signed copies of which shall be filed with the Court and attached to executed copies of this Agreement held by the Husband and Wife and counsel."

[5]The husband used the short form. According to the figures on his tax return, he should have used the long form. See rule 401.

[6]These previously filed rule 401 financial statements were provided to the panel pursuant to its request at oral argument.

of $53,175.00 and income of $23,443 from the corporation. The relevant schedules showed that the latter figure was derived from the 2002 income of the corporation of $227,744, reduced to $23,443 by suspended losses of the corporation from prior years, and by depreciation. The balance sheet as reported on the proposed corporate tax return showed over $800,000 of inventory and retained earnings of $85,169, a figure obtained by subtracting total liabilities from total assets.

In August 2003, the wife, represented by new counsel, filed her motion for relief from the October 15, 2002 judgment, claiming misrepresentation and setting forth in essence the foregoing facts. Appended to her motion were the judgment of divorce, the separation agreement, the husband's October 15, 2002 financial statement, and the proposed tax returns prepared by the accountant.

The husband filed an opposition to the motion. Affidavits were filed by the husband, his lawyer, and his accountant. The husband's affidavit indicated that the corporation sold four houses in 2002, all of the sales taking place before October 15. The other affidavits appended letters showing that files had been made available to the wife's attorney, as well as a letter from Leger responding to certain queries made by her attorney. The judge held a short evidentiary hearing (covering twenty-five pages of transcript).

At the hearing, counsel for the wife pointed out that the husband's financial statement reflected income of $40,000, while the tax returns the wife was asked to sign showed income of more than $76,000. He argued that the accountant's response that the husband could not have known on October 15, 2002 what his income would be for the year was not the issue; the husband had a responsibility to know what it was. Counsel also pointed out that the fortunes of the corporation greatly changed as compared to prior years, and the wife's counsel should have been made privy to that fact.[7] Noting that he did not understand the meaning of the phrase "no estimated business value," used in line g of the husband's rule 401 financial statement, counsel argued it was at a minimum misleading as to the value of the

---

[7]As indicated earlier, the wife had been represented in the divorce proceeding by different counsel.

business. Counsel for the husband claimed the agreement was made on the basis that "we did not estimate a value."

The judge then stated: "I'm more concerned about the income. Not the debt. . . . I find it hard to believe, that in October of 2002 we can't find out that his income in the sub-chapter S was more than whatever they took out, $40,000. . . . Is that what his draw was, $800 bucks a week?" Counsel for the husband replied: "That's correct." The exchange continued:

> JUDGE: "I'm not going to buy that. I'm not going to buy that. I'm not going to buy that from the accountant in October, if he's the one that you say prepared this financial statement —"

> COUNSEL: "He did."

> JUDGE: "— can't tell that this company has a large income. I'm not going to buy that."

Counsel responded that the husband provided the wife with all of the financial records that she requested through her attorney. He pointed out that "there was no formal request for production of documents, interrogatories, or admissions. No depositions were conducted."[8] Counsel then referred to a letter of the accountant. See note 14, *infra.*

The judge, speaking to the husband's counsel, again indicated that he was concerned about the husband's income, saying the wife's counsel was "arguing that on October 15, 2002, your client said he made $40,000 a year or $800 a week. And then he says two months later, he has the year end, reflects that the subchapter S corporation had profits of $227,000, and they used the majority of that to offset prior losses, so even at that, he came up with $73,000 of income. And he's claiming that it should have been obvious on October 15th, that [the husband] was going to be making a lot more than his $800 a week draw."

Leger, the accountant, testified: "[T]his is a complicated business to do the accounting for, first off. It's a construction

---

[8]A letter of the husband's counsel states that the parties attempted to cut down the cost of litigation by simplifying the discovery process and having access to the accountant.

business that consists of inventory, construction in progress. And it's not something where you can just press a button on a computer." He then said that he had provided the wife's attorney with everything he asked for. He repeated: "We had no knowledge of the fact that this was a good year in October of 2002. We did not know that until March of 2003, until we prepared the tax returns."

Counsel for the wife then examined Leger, who acknowledged that he provided the $40,000 figure on the financial statement as the "anticipated year-to-date" figure. When asked what records he had available to him at the time he supplied the figure to the husband, he answered "his pay stub records." That was the only record he looked at that he could recall. Leger didn't look at any corporate income statements, trial balances, or cash flow analyses, and although he talked to the corporate book-keeper, he did not look at any ledgers or balances with respect to the corporation.

Counsel for the husband then asked Leger if he had discussed finances and records with the wife's counsel. Leger answered "yes," and said he had asked the wife's counsel if he needed more information, "and at that time [the wife's counsel] said no, he was fully aware that he did not have any 2002 information at that point. We were fully prepared to provide him that information."[9] The judge then inquired, apparently caustically, "You didn't provide it to your own client when you helped him with the financial statement?" The discussion continued:

> LEGER: "I provided it —"
>
> JUDGE: "The answer to [counsel for the wife's] question, you didn't look at any of those documents that might give you some projection as to what the income for 2002 would be, when you were given the $40,000 figure, you merely took his draw?"

---

[9] The affidavit of the husband is not totally consistent with Leger's testimony on this point. The husband states that counsel for the wife "requested, and was furnished, with extensive documentation regarding the assets and income of the corporation and myself in 2002." The husband also stated in his affidavit that he didn't know what his income would be and that the $800 figure was accurate.

LEGER: "That's correct, your Honor."

JUDGE: "All right. I'll take it under advisement."

Subsequently the judge denied the wife's motion in writing with the following explanation:

> "The moving party bears the burden of proving by clear and convincing evidence that the alleged fraud or misrepresentation exists and that he is entitled to relief. Fraud covered by this section must be of such a nature as to have prevented the moving party from presenting the merits of his case.[10]

> "During the proceedings in this matter, both parties were represented by Counsel. The Defendant [wife] had unfettered access to the plaintiff's accountant and to all documentation regarding the income, expenses and liabilities of Cam Maillet & Sons, Inc.

> "The instant case is analogous to *Sahin* v. *Sahin*, 435 Mass. 396 (2001). As in *Sahin*, the Husband in this matter did not conceal a marital asset from the Wife: Cam Maillet & Sons, Inc. was known, valued (albeit imperfectly), and divided. As such, the Wife was afforded her day in Court. *Sahin* at 405."

The evidence in this case requires a remand for additional findings by the judge. There is no question that the financial statement sets forth the husband's income as $800 a week. The husband certified under penalties of perjury that his income as stated was "true to the best of [his] knowledge and belief," and he also certified that "the information is true and complete."[11]

---

[10]See Reporters' Notes to Mass.R.Civ.P. 60, Mass. Ann. Laws, Court Rules, Rules of Civil Procedure, at 1073 (LexisNexis 2004).

[11]Rule 401(a) provides as follows:

> "(a) Except as otherwise ordered by the court, each party to a divorce or separate support action or any other action where financial relief is requested, shall file with the court and shall deliver to the other party within 45 days from the date of the service of the summons, a complete and accurate financial statement showing, insofar as possible, the assets, liabilities and current income and expenses of both parties and children involved in the case. The form of the financial statement

There is also no question that his corporation in 2002 had income of $227,744 exclusive of suspended losses and depreciation. The sales of the houses in 2002, which presumably accounted for the increased income, all occurred prior to October 15, and hence prior to the preparation of the financial statement. Yet, in filling out the 401 financial statement, the accountant who helped the husband prepare the document testified that no income statements or other corporate records were looked at except the husband's pay stubs indicating his draw.[12]

In reaching the conclusion that the wife had not shown clear and convincing evidence of misrepresentation by the husband, the judge seemed to rely heavily on his finding that former counsel for the wife had "unfettered access" to the accountant and all documentation of the corporation. While our cases do impose a duty of reasonable diligence on opposing counsel where the asset is not hidden, see, e.g., *Kirtz* v. *Kirtz,* 12 Mass. App. Ct. 141, 146 (1981); *Gaw* v. *Sappett,* 62 Mass. App. Ct. 405, 408 & n.4 (2004), in this case, at least, we do not think access to the accountant and his records, by itself, is sufficient to absolve the husband of his obligation to provide an accurate and current statement of his income. As sole owner of the business he was obviously in a better position than the wife or her counsel to know its income. In view of the duties imposed by rule 401, he cannot avoid a finding of misrepresentation of his income by failing to look at evidence of such income.[13] While

which each party must complete is dependent upon his or her income. Except as otherwise ordered by the court, a party whose income equal[s] or exceeds $75,000.00 must complete the long form financial statement. A party whose income is less than $75,000.00 must complete the short form financial statement."

[12]Since the wife does not argue that a fiduciary relationship exists we do not rely on that fact. We note, however, that in *Krapf* v. *Krapf,* 439 Mass. 97, 103 (2003), the Supreme Judicial Court pointed out: "[S]pouses who enter into agreements with each other are held to standards higher than those we tolerate in the arm's-length transactions of the marketplace. Parties to a separation agreement stand as fiduciaries to each other, and will be held to the highest standards of good faith and fair dealing in the performance of their contractual obligations." See *Gaw* v. *Sappett,* 62 Mass. App. Ct. 405, 413 (2004). In this connection, see note 4, *supra.* The acknowledgment in the agreement that the other spouse "has fully described his or her assets" is, of course, meaningless if there was misrepresentation.

[13]*Sahin* v. *Sahin,* 435 Mass. 396 (2001), found analogous by the judge, does

the accountant replied on September 6, 2002 to questions asked by former counsel to the wife, his answers in no way suggested that 2002 was a profitable year, but, in fact, suggested the contrary.[14]

Because we are not sure whether the judge's decision was based almost exclusively on the wife's access to the accountant — we note that the hearing does not suggest that the judge's decision rested on the credibility of the accountant — we remand the matter for further subsidiary findings. The principal question is whether the evidence indicates that the husband or his agent, the accountant, was aware that the figure of the $800 was incorrect at the time they prepared the rule 401 financial statement or that they deliberately ignored evidence that would have made them aware. In either case, misrepresentation would be made out whether or not the wife had access.

We consider the phrase "no estimated business value" to be

---

not, as the judge was undoubtedly aware, provide the standard for determining evidence of fraud or misrepresentation. In that case the motion was filed more than a year after the original judgment, and hence more than fraud had to be shown to justify relief. See *id.* at 401-403. Here the motion was filed within the year. We note another distinction between *Sahin* and this case: there, both the parties had experts who valued the business, and the judge, based on all the information presented, determined its value. See *id.* at 397.

[14]In a letter dated September 3, 2002, following his review of the records, the wife's former counsel claimed a suspended loss of over $100,000 (he apparently was not aware that the suspended loss was more than twice that figure) should be considered a marital asset. He also pointed out that "deposits by customers and inventory show healthy amounts and it raises a significant question as to how the business can be operated at a continuing loss." The accountant's reply stated, inter alia:

> "A suspended loss from an S corporation can be used to offset future income, however, there is no guarantee of future income. This suspended loss continues to grow as Jim has struggled with his business. If Jim shuts down this business the loss would never be utilized. This is not a marital asset that can be valued.
>
> . . .
>
> "With regard to . . . the issue of the financial shape of Cam Maillet & Son, Inc. Jim has been a client of our firm since he formed this entity in 1998. We had several discussions with Jim on attempting to improve the profitability of the Company. Jim has tried but has not been successful. He builds an outstanding house but does not make significant profits."

ambiguous and note that some cases in the past have permitted parties to list assets as having an " 'uncertain' value." See *Kirtz v. Kirtz*, 12 Mass. App. Ct. at 142. We do consider it inappropriate for such terms to be placed on a financial statement without a detailed explanation why the asset cannot be valued or why it has no value. In the case of a business, such information as is available, e.g., tax returns and balance sheets, must be appended.

Accordingly, the matter is remanded to the Probate Court for additional findings whether the husband misrepresented his income on the financial statement. The judge may in his discretion hear additional evidence, and if he should determine there was misrepresentation, he should determine whether the misrepresentation would have had an effect on the outcome. He may in his discretion limit the inquiry to the $40,000 or decide also to consider whether the phrase "no estimated business value" was used with the intent to deceive.

The denial of the motion to vacate the judgment is vacated and the matter is remanded to the Probate and Family Court for proceedings consistent with this opinion.

*So ordered.*