NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12240

DEREK L. YOUNG  vs.  JOY G. YOUNG
(and a consolidated case[1]).


Norfolk.    March 6, 2017. - September 25, 2017.

Present:  Gants, C.J., Lenk, Hines, Gaziano, Lowy, & Budd, JJ.[2]


Divorce and Separation, Alimony, Findings.


Complaints for divorce filed in the Norfolk Division of the
Probate and Family Court Department on January 29 and February
5, 2013.

After consolidation, the case was heard by Jennifer M.R.
Ulwick, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


David H. Lee (Jessica M. Dubin also present) for the
husband.
David E. Cherny (Erin M. Shapiro also present) for the
wife.
W. Sanford Durland, III, & Glenn M. Schley, amici curiae,
submitted a brief.

---

[1] Joy G. Young vs. Derek L. Young.

[2] Justice Hines participated in the deliberation on this
case prior to her retirement.

Jennifer C. Roman & Johnathan P. Diggin, for Women's Bar Association, amicus curiae, submitted a brief.

GANTS, C.J.  The Probate and Family Court judge in this divorce action made two rulings that are the primary subjects of this appeal.  First, the judge found that, where the husband's income from his employment was "on an upward trajectory," the wife may only maintain a standard of living "consistent with the marital lifestyle (which was one where the parties['] needs expanded in accordance with the increasingly available income)" by an award of general term alimony that increases commensurate with the increase in the husband's income.  Second, the judge found that, because of "the complex nature of [the husband's] compensation over and above his base salary and bonus," and because of "the constantly shifting nature of [the husband's] compensation," "it is reasonable and fair in the circumstances" to award alimony to the wife in the amount of thirty-three per cent of the husband's gross income, rather than a fixed amount.

We conclude that, where the supporting spouse (here, the husband) has the ability to pay, the need for support of the recipient spouse (here, the wife) under general term alimony is the amount required to enable her to maintain the standard of living she had at the time of the separation leading to the divorce, not the amount required to enable her to maintain the standard of living she would have had in the future if the

couple had not divorced. We also conclude that, although there might be circumstances where it is reasonable and fair to award a percentage of the supporting spouse's income as general term alimony to the recipient spouse, those circumstances are not present in this case. We therefore remand the case to the Probate and Family Court with instructions to reevaluate the alimony judgment in light of our opinion and enter a new judgment accordingly.[3]

Background. Derek L. Young (husband) and Joy G. Young (wife) had been married for nearly twenty-four years when the husband filed a complaint for divorce in the Probate and Family Court in January, 2013. The wife filed a complaint for divorce one week later, and the two actions were effectively treated as one. In October, 2013, the judge ordered the husband to pay temporary alimony in the amount of $48,950 per month. After a four-day trial, the judge made voluminous findings of fact and issued an amended judgment of divorce on September 25, 2015. We summarize only those findings relevant to the issues on appeal.

The judge found that the husband works as a "high level executive" with a financial institution who receives substantial compensation in various forms. Apart from his annual base salary (which was $350,000 in 2014) and an annual bonus (which

---

[3] We acknowledge the amicus briefs submitted by the Women's Bar Association, and by attorneys W. Sanford Durland, III, and Glenn M. Schley.

was $1.6 million in 2013), he receives compensation through at least seven different compensation programs or share plans, including several types of stock options, a special bonus program, investor entity units, and opportunities to purchase shares of common stock at a discount. The compensation programs vary in how consistently they produce income and in the amount of income they produce. Some investment assets that are earned are liquid and immediately transferrable, and some may not be transferred or converted to cash until sometime in the future. The amount earned, above and beyond the base salary and annual bonus, through these compensation programs is both considerable and variable. The husband's gross income from 2008 through 2012 was approximately $1.53 million in 2008, $2.07 million in 2009, $3.81 million in 2010, $7.96 million in 2011, and $7.76 million in 2012.

The judge found that the parties agreed early in their marriage that the husband would work and the wife would "be a stay-at-home parent and not be employed outside the home." As a result, the wife has not worked outside the home since 1992, and the judge found that she "has no ability to be employed at a level to allow her to maintain a lifestyle post divorce similar to that maintained during the marriage without alimony."

The husband's substantial compensation package allowed the parties to enjoy "an affluent, upper-class station in life and

marital lifestyle during their marriage."  The couple's expenses increased as the husband's income increased during the course of his employment.  Before the separation, the parties were living in a lavish, eight-bedroom home, driving luxury vehicles, and regularly dining out three to four times a week at expensive restaurants.  They had purchased a summer home in Nantucket, were spending "tens of thousands of dollars on articles of clothing and handbags" from designer stores, and regularly enjoyed expensive vacations.

The judge found that, after the parties separated, the wife maintained a level of spending similar to what she spent during the marriage.  According to the wife's October 8, 2013, financial statement, the wife's weekly expenses totaled $8,728 (or $453,856 per year) after subtracting expenses related to the children's college tuition and room and board.  However, according to the wife's September 10, 2014, financial statement, the wife's weekly expenses had increased to $12,575.77 (or $653,940 per year).  The judge found that "many of [the] wife's expenses" were supported by the evidence at trial, but she lacked "personal knowledge regarding her own expenses," certain expenses were "overstated," and her "representations of expenses on her financial statements [were] not an accurate reflection of her needs."  The judge did not make a finding regarding her actual weekly or annual expenses or needs.

The wife sought alimony in the amount of $713,781.49 per year. After considering the husband's ability to pay, the wife's needs, and the other factors required by G. L. c. 208, § 34, the judge did not set a fixed amount of general term alimony but instead ordered the husband to pay the wife each year alimony in the amount of thirty-three per cent of his annual gross income.[4] The judge included within the husband's gross income the husband's base salary and annual bonus, as well as several of the additional components of the husband's compensation package, including but not limited to the husband's deferred bonus, special bonus, special retention bonus, special dividends, and distributions for payment of taxes.[5] The judge reasoned, "Because the parties lived with the expectation and reality that [the husband's] bonus level is on an upward trajectory, and given the fact that their needs historically followed this upward trajectory, and due to the complex nature

---

[4] The judge determined that the husband's alimony obligation would extend until September 18, 2031, the death of one of the parties, or the wife's remarriage, whichever came first.

[5] Under G. L. c. 208, § 53 (b), for purposes of determining the amount of alimony, with exceptions not relevant here, "income shall be defined as set forth in the Massachusetts child support guidelines." See Zaleski v. Zaleski, 469 Mass. 230, 242-244 (2014). Under the guidelines, "income is defined as gross income from whatever source," and specifically includes "salaries," "bonuses," "interest and dividends," and "perquisites of in-kind compensation to the extent that they represent a regular source of income." Child Support Guidelines § I(A) (Aug. 1, 2013). See Snow v. Snow, 476 Mass. 425, 431 (2017).

of [the husband's] compensation over and above his base salary and bonus, it is reasonable and fair in the circumstances to use a percentage for the future alimony particularly given the constantly shifting nature of [the husband's] compensation." The judge appointed a special master to oversee compliance with the judgment and to assist in resolving disputes that might arise.

The husband appealed, and we transferred the case to this court on our own motion.

Discussion. 1. Determination of need for support. "Alimony" is defined in the Alimony Reform Act of 2011, St. 2011, c. 124 (act), as "the payment of support from a spouse, who has the ability to pay, to a spouse in need of support for a reasonable length of time, under a court order." G. L. c. 208, § 48. Neither "ability to pay" nor "need of support" is a defined term under the act. Rather, the act identifies a number of factors that a judge must consider in "determining the appropriate form of alimony and in setting the amount and duration of support," and gives the judge the discretion to consider other factors that the judge deems "relevant and material." G. L. c. 208, § 53 (a).[6] "A judge has

_____

[6] General Laws c. 208, § 53 (a), provides: "In determining the appropriate form of alimony and in setting the amount and duration of support, a court shall consider: the length of the marriage; age of the parties; health of the parties; income,

broad discretion when awarding alimony under the statute," Zaleski v. Zaleski, 469 Mass. 230, 235 (2014), citing Heins v. Ledis, 422 Mass. 477, 480-481 (1996), but the act establishes presumptive parameters:  the amount of general term alimony "should generally not exceed the recipient's need or [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued."  G. L. c. 208, § 53 (b).

A judge must consider and weigh all the relevant factors, but where the supporting spouse has the ability to pay, "the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage."  Pierce v. Pierce, 455 Mass. 286, 296 (2009).  See Heins, 422 Mass. at 480, quoting Inker, Alimony and Assignment of Property:  The New Statutory Scheme in Massachusetts, 10 Suffolk U. L. Rev. 1, 8 (1975) (noting "the inherent limitation of alimony that it be only for 'the amount necessary to support the wife in the manner of living to which she has been accustomed'"); Grubert v. Grubert, 20 Mass. App. Ct. 811, 819 (1985) ("The standard of

employment and employability of both parties, including employability through reasonable diligence and additional training, if necessary; economic and non-economic contribution of both parties to the marriage; marital lifestyle; ability of each party to maintain the marital lifestyle; lost economic opportunity as a result of the marriage; and such other factors as the court considers relevant and material."

need is measured by the 'station' of the parties -- by what is required to maintain a standard of living comparable to the one enjoyed during the marriage").  Two of the statutory factors in § 53 (a) are "marital lifestyle" and the "ability of each party to maintain the marital lifestyle."  Both focus on the spouses' lifestyle during the marriage.  See Zaleski, 469 Mass. at 243 ("Because 'need' is a relative term for purposes of the act, it must be measured in light of mandatory considerations that include the parties' marital lifestyle").  See also 1 Lindey and Parley on Separation Agreements and Antenuptial Contracts § 22.63[2][e] (2d ed. 2017) ("standard of living experienced during the several years before the divorce" relevant for alimony determination is preseparation standard of living); L.D. Wardle & L.C. Nolan, Fundamental Principles of Family Law 715 (2d ed. 2006) ("the historic baseline for measuring 'need' has been the standard of living the parties enjoyed during the marriage").  Thus, both the act and the case law interpret "need" in terms of the marital lifestyle the parties enjoyed during the marriage, as established by the judge at the time of the order being issued, in this case, the judgment of divorce.[7]

---

[7] The other factors the judge must consider in making an alimony determination under G. L. c. 208, § 53 (a), may also bear on the analysis of need, such as the health and age of the parties.  See, e.g., 1 Lindey and Parley on Separation Agreements and Antenuptial Contracts § 22.63[2][l] (2d ed. 2017) (must evaluate need in light of other criteria, such as party's

Where, as so often happens, the couple's collective income is inadequate to allow both spouses to maintain the lifestyle they enjoyed during the marriage after their household is divided in two through divorce, "the recipient spouse 'does not have an absolute right to live a lifestyle to which he or she has been accustomed in a marriage to the detriment of the provider spouse.'" Pierce, 455 Mass. at 296, quoting Heins, 422 Mass. at 484. Instead, "[t]he judge must consider all the statutory factors and reach a fair balance of sacrifice between the former spouses when financial resources are inadequate to maintain the marital standard of living." Pierce, supra. The act presumptively provides that the "fair balance of sacrifice" means that the supporting spouse generally should not be required to pay more than thirty-five per cent of the difference between the parties' gross incomes. G. L. c. 208, § 53 (b).

Here, given the husband's substantial ability to pay, the determination of alimony rested solely on the wife's needs, that is, the amount necessary to allow her to maintain the lifestyle she enjoyed prior to the termination of the marriage. Where, as here, the husband's income grew considerably over the years and the marital lifestyle grew with it, the wife's need for alimony reflects the need to enjoy the more expensive lifestyle she had grown accustomed to before the marriage ended. See Zaleski, 469

health).

Mass. at 243; Wardle & Nolan, Fundamental Principles of Family Law, supra at 715. The judge here appropriately recognized that "the parties' needs expanded in accordance with the increasingly available income" during the marriage, but the judge erred in determining that the wife's need for support is to continue to expand after the divorce commensurate with the anticipated "upward trajectory" of the husband's income. "[T]he award must reflect the parties' marital lifestyle," not the marital lifestyle the parties might have enjoyed had they stayed together. See Zaleski, supra at 242. Even if the parties enjoyed an upwardly mobile lifestyle for the duration of their marriage, nothing in the language of the statute or our case law suggests that the recipient spouse is entitled, by way of alimony, to enjoy a lifestyle beyond what he or she experienced during the marriage.[8,9]

---

[8] In light of this conclusion, we need not address the husband's argument that the judge was clearly erroneous in finding that the husband's income would continue to grow on an "upward trajectory." Even if it did, the wife's alimony would still be limited to the amount needed to allow her to continue to live the lifestyle she enjoyed at the end of the marriage.

[9] We do not address what alimony would be appropriate in the quite different circumstances of a divorce where one spouse was on the cusp of being able to afford a more expansive lifestyle after separating from the spouse who had financially supported him or her while he or she completed medical school or business school. The alimony sought in this case was general term alimony. In the circumstances we describe in this footnote, G. L. c. 208, § 48, provides for "reimbursement alimony," defined as "the periodic or one-time payment of support to a

2. Percentage-based alimony award. The judge ordered that the husband pay the wife alimony in the amount of thirty-three per cent of his various sources of income. The husband contends that the percentage-based award is "self-modifying" because the amount of alimony he must pay under its terms varies with his income from year to year. He contends that a "self-modifying" order is prohibited by G. L. c. 208, § 49 (e), which permits modifications in the amount of alimony only upon a showing of "a material change of circumstances warranting modification."

We reject the argument, as we have before in a different context, that a judge lacks statutory authority to order a supporting spouse to pay alimony in an amount that may vary according to variables or contingencies set forth in the order, such as the income of the supporting spouse, the rate of inflation, or, where the spouses reside in different countries,

---

recipient spouse after a marriage of not more than [five] years to compensate the recipient spouse for economic or noneconomic contribution to the financial resources of the payor spouse, such as enabling the payor spouse to complete an education or job training." See Drapek v. Drapek, 399 Mass. 240, 248 (1987) (where wife "postponed her educational and professional plans in order to put her husband through [medical] school," judge did not abuse discretion in awarding wife 9.35 per cent of gross income or at least $60,000 with time limit of five years).

We also note that different factors and principles govern the equitable division of property in a divorce. See G. L. c. 208, § 34 (identifying factors judge "shall consider" in division of property in divorce); Heins v. Ledis, 422 Mass. 477, 482 (1996) ("The concepts of alimony and property division have been historically viewed as separate and distinct"). We address only the issue of general term alimony.

changes in the currency exchange rate.  See Stanton-Abbott v.
Stanton-Abbott, 372 Mass. 814, 815-816 (1977) (affirming
judgment requiring semiannual increases in alimony by one-half
of any percentage increase in British retail price index).  We
do not consider every change in the amount of payment under such
an alimony order to be a modification of the judgment, which we
recognize would require a showing "by the party favorably
affected that conditions [have] changed justifying the
modification, and . . . procedural due process for the party
adversely affected."  Id. at 816.  "When time brings about the
change of situation of the parties, or trips the contingency, or
alters the basis of the calculation, as provided in the
judgment, we should not regard the corresponding shift in the
rate of payment as a modification of the judgment which requires
new justification in another court proceeding.  The judgment has
remained the same although its variable terms, which were
presumably argued and deliberated before they were approved,
have produced results which in some sense are new."  Id.

As we have also recognized, the fact that the statute does
not bar alimony orders with variable or contingent provisions
does not mean that such orders are "advisable on the merits, or
compatible with the fundamental purposes of alimony."  Id. at
817.  Here, the percentage-based award ran afoul of the act and
therefore was an abuse of discretion not because of its variable

nature, but because it was intended to award the wife an amount of alimony that exceeds her need to maintain the lifestyle she enjoyed during the marriage.

There may be cases in which a variable or contingent award is warranted, but such cases are the exception rather than the rule, and must be justified by the special circumstances of the case. See id. (parties' circumstances "presented a special case"). In most cases, setting the amount of alimony at a fixed amount, subject to modification upon a material change in circumstances, is preferable in order to provide "a clean break between the parties" and avoid "continued strife and uncertainty" (citation omitted). Cf. Dewan v. Dewan, 399 Mass. 754, 757 (1987) (involving division of property). A variable or contingent award may make alimony judgments more difficult to enforce, especially where the variable or contingency is inadequately defined or where it may not be clear whether the contingency has been triggered. See, e.g., Wing v. Wing, 549 So. 2d 944, 947-948 (Miss. 1989) (finding of contempt improper where separation agreement did not specify precisely which consumer price index governed progressive increases in child support). See also Breiner v. Breiner, 195 Neb. 143, 145-146 (1975); Provenzano v. Provenzano, 71 A.D.2d 618, 618 (N.Y. 1979). Awarding alimony as a percentage of income may encourage income manipulation in order to reduce the alimony obligation.

See Baccanti v. Morton, 434 Mass. 787, 800 (2001) (potential for fraud where spouse may collude with employer to manipulate compensation in view of divorce proceedings). Relatedly, where alimony is a percentage of income, proving contempt becomes more difficult because, instead of simply proving that payments have fallen short of a specified amount and that the supporting spouse had the ability to pay, the parties may be forced to litigate what is and is not "income." See, e.g., In re Marriage of Winne, 239 Ill. App. 3d 273, 284-285 (1992); Mabee v. Mabee, 159 Vt. 282, 285-286 (1992) (considering whether capital gains are income). We note that the judge thought it necessary to appoint a special master, paid for by the parties, to ensure compliance "[d]ue to the complicated nature of . . . the ongoing obligations between the parties regarding the payment of alimony." Not everyone can afford to pay a special master.

We do not suggest that variable or contingent awards are warranted only in extraordinary circumstances. We recognize that returning to court to modify a judgment may be an unnecessary and costly burden where it is based on a foreseeable change of circumstances that can be anticipated in the alimony judgment. For instance, where the inflation rate is significant, a cost-of-living adjustment based on a specific consumer price index will result in changes to the actual amount of alimony paid, but is intended to keep the original award of

alimony constant in terms of real purchasing power.  Several Massachusetts cases have affirmed alimony judgments that included cost-of-living adjustments.  See, e.g., DeMatteo v. DeMatteo, 436 Mass. 18, 22, 39 (2002); Mailer v. Mailer, 390 Mass. 371, 375 (1983); Moore v. Moore, 389 Mass. 21, 22, 26 (1983); Stanton-Abbott, 372 Mass. at 815-818.

There may also be special circumstances where an alimony award based on a percentage of the supporting spouse's income might not be an abuse of discretion, such as where the supporting spouse's income is highly variable from year to year, sometimes severely limiting his or her ability to pay, and where a percentage formula, averaged over time, is likely not to exceed the needs of the recipient spouse.  In Wooters v. Wooters, 42 Mass. App. Ct. 929, 929-931 (1997), the Appeals Court affirmed a judgment that ordered the husband, who was a partner in a large law firm, to pay alimony in the amount of one-third of his gross employment income because he "was about to undergo a serious operation, and it was uncertain how much he would be able to work," and because his compensation from his law firm "had considerable fluctuations."  The court found that these circumstances "presented a special case" that suggested the use of a "self-executing formula."  Id. at 931, quoting Stanton-Abbott, 372 Mass. at 817.

The fluctuations in the husband's income in this case do

not present a comparable "special case" warranting the judge's percentage-based formula for two reasons. First, given the substantial financial assets available to the husband, the fluctuations in his annual income do not materially affect his ability to pay a fixed alimony award that would meet the wife's needs. Second, as earlier noted, the percentage-based formula was intended to allow the wife's lifestyle to become more lavish than the marital lifestyle as the husband's income increases over time, not to approximate over time the amount needed to meet the wife's need to maintain her marital lifestyle.[10]

Conclusion. The case is remanded to the Probate and Family Court with instructions to reevaluate the alimony judgment in light of our opinion and enter a new judgment accordingly.

So ordered.

---

[10] Because we reverse the percentage-based judgment in this case, we need not address the husband's argument that the provision in paragraph 6(c) of the amended judgment, which awards the wife a thirty-three per cent interest in any shares the husband subsequently acquires with his bonus compensation and imposes a constructive trust for the wife's benefit regarding these shares, represents an impermissible award of property acquired after the marriage.