CHERYL L. HEINS vs. ALAN E. LEDIS.

Worcester. November 6, 1995. - April 18, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Divorce and Separation,* Alimony, Division of property.

Discussion of the authority of a Probate and Family Court judge under
    G. L. c. 208, § 34, to award alimony and to make an equitable division
    of marital property in divorce proceedings and discussion of the distinc-
    tions between the concepts of alimony and property division. [480-481,
    482-483]
In a divorce proceeding, the probate judge incorrectly awarded alimony to
    the wife in part to reimburse the wife for her lost investment in the
    husband's business, and the award was improper without a determina-
    tion of the wife's financial need or her potential earning capacity: the
    matter was remanded for further consideration of the alimony issue.
    [483-485]

COMPLAINT for divorce filed in the Worcester Division of
the Probate and Family Court Department on February 17,
1993.

The case was heard by *Arline S. Rotman,* J.

The Supreme Judicial Court granted an application for
direct appellate review.

*Wendy Sibbison* for the defendant.

*Raymond A. Desautels, III,* for the plaintiff.

LIACOS, C.J. Cheryl Heins (wife) filed a complaint for
divorce against Alan Ledis (husband) in February, 1993. Af-
ter trial, a judge in the Probate and Family Court Depart-
ment, on September 13, 1994, made a division of the parties'
marital property and ordered the husband to pay alimony to
the wife in the amount of $300 weekly "until the death of ei-
ther party or six years, whichever occurs first." The husband
appeals. The judge denied the husband's motion for a stay of
the order pending appeal. A single justice of the Appeals
Court subsequently denied the husband's appeal from the
denial of the motion. We allowed the husband's application
for direct appellate review. On appeal, the husband challenges

the alimony award, claiming the judge (1) unlawfully awarded alimony to the wife where she supported herself during the marriage and is on a voluntary leave of absence from her job, (2) improperly used alimony to reimburse the wife for her investment in the husband's veterinary business, and (3) violated the equitable purpose of G. L. c. 208, § 34 (1994 ed.), and constitutional principles of equal protection by basing the alimony award on the husband's, but not the wife's, potential earnings. We hold that the judge erred in using an award of alimony to reimburse the wife for her lost investment in the husband's business, and did not explain adequately a reason for the alimony award independent of the improper reimbursement.[1] We reverse the award and remand the case to the Probate Court.

The judge found the following facts. The parties were married on April 5, 1987; this was the second marriage for both. The husband has one child from a previous marriage. This child was thirteen years old at the time of the divorce. The wife's two children from her previous marriage were adults at the time of the divorce, although one resided with the parties during the marriage. No children were born of this marriage.

The wife has a masters degree in teaching and taught at a high school for twenty-two years. At the time of the marriage her net worth was $99,300. Her salary for the last year she worked was $41,158.21 plus sixty per cent of her health and dental insurance. The husband has a graduate degree in Veterinary Medicine. During the marriage he worked three part-time jobs, earning various amounts between $44,610 and $60,183 during the years 1987 through 1992. His net worth at the time of the marriage was $10,350, and his financial statement listed his weekly income at the time of the divorce as $541. The parties maintained separate bank accounts. During the marriage the husband earned more than the wife. The judge found that the wife devoted all of her money to the support of the marital enterprise while the husband did not. The parties resided in the home the wife owned prior to the marriage and the husband contributed $300 monthly toward the $2,000 monthly carrying costs.

The parties' goal was to open a veterinary clinic. The wife sold her home and applied the net proceeds ($85,000) toward

---

[1]In the view we take of the statute and of the record, we do not reach the constitutional claim.

the purchase of another house in 1992. In this house, the parties opened and operated their veterinary clinic. The wife additionally spent money and time renovating and equipping the clinic. The husband contributed approximately $22,000 toward the purchase and renovation of this real estate. The clinic was located on the first floor of the house, the second floor was the marital home, and the third floor was a rental apartment. The only kitchen facilities were located in the clinic area.

After the clinic opened in the spring of 1992, the parties' marriage began to deteriorate. In the fall of 1992, the husband became romantically involved with a woman who had volunteered her time working at the clinic, and moved in with her in December, 1992. The wife, who had one-half of a lung removed due to cancer and suffers from allergies and a low immune system, fell into a major depression. She requested and received an unpaid leave of absence from her teaching job, which leave continued through the 1994-1995 school year. At the time of trial, the wife was taking antidepressant medication and her depression was described as "partially remitted." She continues to exhibit depressive symptoms and sees her psychotherapist intermittently.

Prior to trial, the wife underwent a court-ordered psychiatric evaluation to determine her ability to return to work. The psychiatrist concluded that she does not presently have a mental disability that would preclude her from returning to work. Following the separation she travelled the country in her motor van. She planned to borrow money from her father to spend three years skiing, travelling, doing art work, and possibly writing a book. She had anticipated that the veterinary clinic would eventually provide the couple with sufficient funds that she could discontinue teaching, a career she never wanted but entered "because of money concerns."

Following trial, the judge entered a judgment of divorce nisi for the wife on grounds of the husband's cruel and abusive treatment toward the wife, and made the following orders. The wife was to transfer all her right, title, and interest in the marital home to the husband in consideration of $17,500, subject to the mortgage which the husband was to assume. The wife was further to release all rights she may have had in the veterinary equipment in exchange for $15,000, which the husband was to pay by a promissory note with interest, the

principal due in three years. Each party was to retain his or
her own personal property and debts, and to maintain his or
her own health insurance. The husband was ordered to pay
the wife $2,500 toward her counsel fees, and to pay the wife
alimony until the death of either party or six years, which-
ever occurred first.

The court's power to award alimony and make an equit-
able division of property is wholly statutory. See *Gottsegen* v.
*Gottsegen*, 397 Mass. 617, 621 (1986); Inker, Alimony and
Assignment of Property: The New Statutory Scheme in Mas-
sachusetts, 10 Suffolk U.L. Rev. 1, 7 (1975). The concept of
alimony is historically based in the early common law obliga-
tion of a man to support his wife. According to early com-
mon law property concepts, a married couple was an indivisi-
ble unit with legal title to all property being vested in the
husband. Because the marriage bond was inseparable, the
modern notion of "divorce" did not exist and the obligation
of a husband to support his wife remained intact following a
separation of the spouses. *Id.* at 12 & n.50. Following the
onset of married women's property acts and the recognition
of true divorce, alimony was seen as an alternative to leaving
many women destitute. *Gottsegen* v. *Gottsegen, supra* at 622-
623. The 1974 amendment to G. L. c. 208 gave courts the
ability to award alimony to either a husband or wife, and to
award either spouse's property to the other. St. 1974, c. 565,
approved July 19, 1974. *Bianco* v. *Bianco*, 371 Mass. 420, 422
(1976). Allowing a court to divide the property was seen as a
mechanism for recognizing the nonmonetary contribution of
a spouse, usually the wife, to a marriage without the inherent
limitation of alimony that it be only for "the amount neces-
sary to support the wife in the manner of living to which she
has been accustomed." Inker, *supra* at 8. Chapter 565
abolished the notion that a wife's obligation is to provide the
services of a homemaker and a husband's obligation is to
provide economic support for the family. *Id.* Instead, the
Legislature adopted the gender-neutral principle that mar-
riage is a partnership, and that spouses have a mutual obliga-
tion to support the children of the marriage as well as the
other spouse. See *Saraceno* v. *Saraceno*, 369 Mass. 967 (1976)
(c. 565 eliminates possible gender discrimination in alimony
statute).

A judge has broad discretion when awarding alimony and

dividing marital assets pursuant to G. L. c. 208, § 34 (1994 ed.).[2] *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). *Bianco* v. *Bianco, supra.* The judge must consider fourteen mandatory factors set out in the third sentence of § 34, namely "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, and the opportunity of each for future acquisition of capital assets and income." In addition, the judge may, in his or her discretion, consider "the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit." G. L. c. 208, § 34. *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). *Drapek* v. *Drapek, supra.* The judge must make express findings indicating that he or she weighed each of the required factors and did not consider any irrelevant factors. *Pare* v. *Pare*, 409 Mass. 292, 296 (1991). *Bowring* v. *Reid, supra. Rice* v. *Rice, supra* at 402-403. Additionally, the reasoning for the judge's conclusions must be apparent in his or her findings and rulings. *Pare* v. *Pare, supra. Savides* v. *Savides*, 400 Mass. 250, 252 (1987). A judgment will not be disturbed on appeal unless "plainly wrong and excessive." *Pare* v. *Pare, supra* at 296, citing *Redding* v. *Redding*, 398 Mass. 102, 107 (1986).

The judge made the following findings. With respect to the occupation, vocational skills and future employability of the parties: "Although she states that she is unable to return to teaching, a psychiatric examination conducted by court order

[2]General Laws c. 208, § 34 (1994 ed.), states in relevant part: "Upon divorce . . . the court of the commonwealth, provided there is personal jurisdiction over both parties, may make a judgment for either of the parties to pay alimony to the other. In addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other . . . . In determining the amount of alimony, if any, to be paid, or in fixing the nature and value of the property, if any, to be so assigned, the court . . . shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income . . . . The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."

concluded that [the wife] has no present psychiatric disability which would preclude her from returning to work. . . . She has instead chosen to travel and enjoy the many activities which she had no time to enjoy while she raised her children, taught school and later prepared for the opening of the clinic. [The wife] testified that she had planned to leave teaching after the clinic was operational and able to provide for both parties." As to the contribution of the parties: "I find that the wife's contribution toward the marital estate was more significant than the husband's. . . . The wife never realized anything from her contribution of time, money and effort. The husband now considers the business his own. The wife would not be able to operate the clinic without the husband. The wife sold the home which she owned prior to the marriage and which the husband lived in for a contribution of $300.00 monthly until it was sold in 1992. The monthly carrying costs were $2,000.00. The wife invested the entire proceeds of the sale ($85,000.00) in the establishment of a veterinary clinic and the purchase and renovation of real estate to house it. The husband's financial contributions to the clinic were minimal." Finally, as to the needs of the parties, the judge found that the wife's "future needs are vague as she has not established a stable lifestyle since the parties['] separation. The wife needs support from the husband to provide for her basic needs at present and to allow her to be reimbursed for the money she expended to establish his business."

General Laws c. 208, § 34, provides that "[i]n addition to or in lieu of a judgment to pay alimony, the court may assign to either husband or wife all or any part of the estate of the other." The concepts of alimony and property division have been historically viewed as separate and distinct. "The use of the words 'in lieu of' clearly indicates that something other than alimony was intended." Inker, Alimony and Assignment of Property: The New Statutory Scheme in Massachusetts, 10 Suffolk U.L. Rev. 1, 4-5 (1975). The two theories evolved in response to conceptually and practically distinct challenges in the development of family law. "Alimony is an award for support and maintenance and has historically been based on the common law duty of the husband to support his wife. Property division, on the other hand, is based on the joint contribution of the spouses to the marital enterprise." *Id.* at

11. See *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988) (property division serves different purpose than, and does not preclude, tort action for damages suffered during marriage). Property settlements are designed largely to effectuate a final and complete settlement of obligations between the divorcing spouses. While alimony is modifiable on the showing of a material change in circumstances, see G. L. c. 208, § 37 (1994 ed.), property settlements are not. Inker, *supra* at 10-11. Finally, the two concepts are treated differently for Federal income tax purposes. See 26 U.S.C. § 71(a), (b) (alimony taxable to payee spouse), § 215 (alimony deductible to payor spouse), § 1041(c)(2) (1994) (property division incident to cessation of marriage nontaxable event); Inker, *supra* at 11 n.40. Thus, "it is important that the courts do not blur the distinction between alimony and property division. . . . [T]he distinction . . . should be clarified in both separation agreements and divorce decrees." Inker, *supra* at 11.

It is clear from the judge's findings that she awarded alimony at least in part to reimburse the wife for her lost investment in the veterinary business. The judge found that, "[i]f the wife were reimbursed the funds she lost in her real estate and put into the husband's business, she would be able to use these funds for her support if she continued to choose not to work." The real estate has been described as a "white elephant," as it is attractive only to a specialized buyer. That the market value of the real estate had diminished to a point at which the wife can no longer recoup her initial investment, however, does not warrant an order of alimony. A division of marital assets anticipates a final and equitable distribution of the property owned by the parties at the time of the divorce, and it is from those assets only that a judge can make her division.[3] See *Pare* v. *Pare*, *supra* at 297 (increased value of real estate resulting from market conditions should be divided between both parties); *Savides* v. *Savides*, *supra* at 252 (judge properly divided property at time of divorce rather than separation, taking into account lack of wife's contribution after separation). In making an equitable division of the parties' property, the judge had available for distribution "all or any

---

[3]Where property division takes place in a separate proceeding after the divorce, the property is valued at the time of the separate proceeding, but § 34 factors are assessed as of the time of divorce. *Pare* v. *Pare*, 409 Mass. 292, 296 n.4 (1991).

part of the estate of the other." G. L. c. 208, § 34. A party's "estate" includes all property to which a party holds title, however acquired. *Dalessio* v. *Dalessio*, 409 Mass. 821, 825 (1991), *S.C.*, 413 Mass. 1007 (1992). *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). Thus, in making a division of assets the judge was limited, for better or worse, to the property owned by the parties at the time of the divorce. Such property, however, was not limited to the real estate. It would have been proper for the judge to award the wife a greater share of the marital property, utilizing all property available in addition to the real estate, to reimburse her for her greater proportional investment in the veterinary business. See *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 170 (1989). It was improper, however, to use alimony as a mechanism for such a property division.

An award of alimony is improper absent a finding of financial need on the part of the recipient spouse. *Keller* v. *O'Brien*, 420 Mass. 820, 827 & n.13 (1995). *Heacock* v. *Heacock*, *supra* at 24. *Gottsegen* v. *Gottsegen*, 397 Mass. 617, 623 (1986) ("§ 34 does *not* alter the fundamental purpose of alimony: to provide economic support to the dependant spouse" [emphasis in original]). See C.P. Kindregan & M.L. Inker, Family Law and Practice § 882 (1990 & Supp. 1995). A person does not have an absolute right to live a lifestyle to which he or she has been accustomed in a marriage to the detriment of the provider spouse. See *Keller* v. *O'Brien*, *supra* at 829 ("The mere fact that, without alimony, the defendant would not be able to live with her second husband in the way in which she lived prior to her marriage to him is not a valid reason to continue alimony"); *Schuler* v. *Schuler*, 382 Mass. 366, 375 (1981) ("Moreover, we do not hold that a support provider would have to deplete his total liquid or other assets in an effort to meet his support obligations"). The occupation, vocational skills, and employability of the parties must be considered when awarding alimony. G. L. c. 208, § 34. The evaluation of vocational skills takes into account a party's age, health, and reasonable employment prospects. "The fact that both parties have vocational skills and are capable of being self-supporting and maintaining individually their marital station in life suggests that an order which separates the economic lives of the parties as much as possible after the divorce may be appropriate." C.P. Kindregan & M.L. Inker, Family

Law and Practice § 1013, at 27 (1990), citing *Rolde* v. *Rolde,* 12 Mass. App. Ct. 398, 401-402 (1981). A judge is not limited to a party's actual earnings but may in the proper circumstances consider potential earning capacity. See *Schuler* v. *Schuler, supra* at 374.

The judge did not indicate that the wife was in need of financial support, nor why a properly made award should terminate in six years. See *Bowring* v. *Reid,* 399 Mass. 265, 268 (1987) (three-year limited alimony provision unwarranted absent "clear and adequate explanation").[4] Indeed, the judge found that the wife was able to work but had voluntarily chosen not to do so. The wife here, although suffering from some physical ailments and "partially remitted" depression, holds a masters degree and, at the time of trial, had a job awaiting her. The judge should have considered the wife's potential earning power when determining whether an award of alimony was appropriate. It is not clear from the judge's findings and conclusions that, apart from her need for reimbursement of her lost investment in the veterinary clinic, the wife was in need of alimony from the husband. Where such a conclusion is not apparent from the record, the award warrants reversal. *Redding* v. *Redding,* 398 Mass. 102, 108 (1986).

We vacate the judgment of divorce nisi with respect to the award of alimony stated in the third paragraph, and the division of assets stated in paragraphs one, two, four, and five. The judgment in all other respects remains in force. In light of our opinion, we need not address the husband's claim that

---

[4]We are aware of the use of "rehabilitative alimony," in instances where one spouse is not immediately financially independent, but where factors make it relatively certain that financial support is needed only for a temporary period. See *Zildjian* v. *Zildjian,* 8 Mass. App. Ct. 1, 15 & n.14 (1979); Krauskopf, Rehabilitative Alimony: Uses and Abuses of Limited Duration Alimony, 21 Fam. L.Q. 573, 581 (1988). Such an award is time-limited and self-terminating, eliminating the required showing of "material change" in circumstances to effect a modification of an award. See G. L. c. 208, § 37 (1994 ed.); *Bush* v. *Bush,* 402 Mass. 406, 411 (1988). The concept is not without its critics. See *Zildjian* v. *Zildjian, supra* at 16; Krauskopf, *supra* at 573-576; Inker, Towards a New Justice in Marital Dissolution: The Massachusetts Statutory Scheme and Due Process Analysis, 16 Suffolk U.L. Rev. 907, 919 (1982). The judge made no finding here that the wife's support needs, if any, were temporary or that rehabilitative alimony was otherwise appropriate. We decline to speculate as to the judge's intentions in this regard.

the award was excessive as reimbursing the wife in excess of her investment in the veterinary clinic, nor do we address the husband's claimed inability to pay. The case is remanded to the Probate and Family Court for further consideration in light of this opinion.

*So ordered.*