Jeffrey Turner appeals from a modification judgment entered by a judge of the Probate and Family Court on his complaint to terminate alimony and on his former wife's counterclaim for modification. Relying in part on George v. George, 476 Mass. 65 (2016), he claims that the judge abused her discretion in issuing an alimony order deviating from the presumptive durational limits without clearly expressing the reason for doing so, and in focusing on only one of the factors applicable to modifying an existing order. G. L. c. 208, § 53(e ), inserted by St. 2011, c. 124, § 3. He also argues that the judge erred in attributing income to him, in considering his present wife's income in fashioning the alimony order, and in failing to list his former wife's cohabitation as a basis for future termination of alimony. For the reasons that follow, we agree that the modification judgment must be vacated and this matter remanded to the Probate and Family Court in light of the George case.
Background. This was a traditional marriage, lasting approximately eighteen years (or 217 months). Joan Turner, the former wife, stopped work upon the birth of the parties' first of two children (both children are now emancipated). Jeffrey[2] was formerly a vice-president of several companies, most recently a technology start-up business that did not succeed; at the time of the modification hearing he was unemployed. He was unable to obtain a similar position, despite what the judge found were his strong efforts, and he argued that, due to his age (fifty-seven in 2015), he was unemployable. In July, 2010, Jeffrey remarried, moving into his present wife's home, which she owned prior to their marriage.
The parties' original separation agreement, incorporated in the divorce judgment of April, 2002, obligated Jeffrey to pay $500 per week in child support and $450 per week in alimony (and up to one-third of any salary or commissions in excess of $150,000 annually) until Jeffrey reached age sixty-five (or the death of either party, or Joan's remarriage).[3]
On April 7, 2014, Jeffrey filed the present modification complaint, asserting a change of circumstances due to his decreased income, seeking termination of his alimony in accordance with durational limits under the Alimony Reform Act (Act), and requesting an order for Joan to repay him the $6,000 child support overpayment deferred by the 2012 modification judgment. Joan responded with a counterclaim, requesting a deviation from the alimony durational limits because of her inability to provide for her own support, and asking that the judge attribute income to Jeffrey.
After trial, the judge found that Joan is not self-supporting, even though, at the time of trial, she was working as a bank teller and had made some advancement in her position with the bank. The judge concluded that Jeffrey had failed to pursue employment at a lower level (declining various offers of employment), and imputed to him an annual income of $66,500.[4] Although the judge found that Jeffrey provided insufficient evidence to establish that he had been reasonably engaged in a job search that would result in employment, she also determined that Jeffrey was unable to provide support at the same or similar level as at the time of divorce; thus, Jeffrey's weekly alimony obligation was reduced to $224 (i.e., thirty-three percent of the difference between Jeffrey's attributed income and Joan's actual income), plus thirty-three percent of any amount earned in excess of $66,500 annually. In calculating the new alimony order, the judge also considered Jeffrey's present wife's contribution to his living expenses in determining his ability to pay.
In addition, because the judge found that Joan was unable to provide sufficiently for her own support, the judge deviated from the durational limits in accordance with G. L. c. 208, § 53(e )(8), obligating Jeffrey to continue paying alimony until age sixty-five, rather than the presumptive termination date (September 1, 2015) based on their eighteen-year marriage. The judge rationalized that, because Joan "credibly testified that, had she known that alimony would possibly not continue until [Jeffrey] turned 65, as they had agreed[,] she never would have agreed to have assets set aside for her daughter's college or agreed to share equally the cost of their daughter attending Columbia [University], despite no court order for her to do so."
Discussion. First, alimony awards predating the enactment of the Act are considered general term alimony; this category of alimony may be modified in amount and duration upon a material change in circumstances but "for not longer than 80 per cent of the number of months of the marriage" if the duration of the marriage is, as here, between fifteen and twenty years. G. L. c. 208, § 49(b )(4). See Rodman v. Rodman, 470 Mass. 539, 544 (2015) (durational limits are retroactive and applicable to awards predating Act). A judge may, however, deviate beyond these termination dates if written findings establish that doing so is in the interests of justice. "The recipient spouse bears the burden of proving by a preponderance of the evidence that deviation beyond the presumptive termination date is 'required in the interests of justice.' G. L. c. 208, § 49(b )." George v. George, 476 Mass. at 70. "Further, a judge should evaluate the circumstances of the parties in the here and now; that is, as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce." Ibid.
At the time the present modification judgment entered in August, 2015, the judge did not have the benefit of the George case. In George, as in this case, the judge concluded that, had the former wife known at the time of the divorce that the former husband's alimony obligation would terminate before the date specified in the merged separation agreement, "she would likely have 'bargained for' a different division of property." Ibid. The Supreme Judicial Court held that this analysis was flawed,[5] as it was "in direct contravention of the Legislature's intent that the durational limits apply to preexisting alimony awards." Id. at 70-71. The judge's reliance here on a "benefit of the bargain" analysis is likewise flawed. In this case, as in George, the judge did not "evaluate the circumstances of the parties in the here and now," but rather, speculated as to what Joan might have done differently at the time of divorce had she known that alimony payments would terminate prior to Jeffrey's full retirement age. Id. at 70. In addition, the judge failed to include in her findings any reasoning as to why a deviation from the presumptive durational limits is required "in the interests of justice." This was "plainly wrong." Zaleski v. Zaleski, 469 Mass 230, 236 (2014), quoting from Heins v. Ledis, 422 Mass. 477, 481 (1996).
Next, "[a]lthough a 'judge has broad discretion when awarding alimony under the [Act],' the judge must consider all relevant, statutorily specified factors, such as those set forth in G. L. c. 208, §§ 49(d ) and 53(a )." Duff-Kareores v. Kareores, 474 Mass. 528, 535-536 (2016), quoting from Zaleski v. Zaleski, 469 Mass. 230, 235 (2014). The appropriate statutory factors for modifying an existing alimony order that deviates from durational limits, as in this case, are set forth in G. L. c. 208, § 53(e ).[6] Here, it is not clear from the judge's findings that she considered separately, as she must, each of these factors before ordering a deviation from the durational limits.
Finally, the judge was permitted to attribute income to Jeffrey in determining whether to modify the existing alimony order, as "[a] judge is not limited to a party's actual earnings but may ... consider potential earning capacity" when attributing income. Heins v. Ledis, 422 Mass. at 485. See Kelley v. Kelley, 64 Mass. App. Ct. 733, 741 (2005) (income may be attributed when judge determines "that a support provider is voluntarily earning less than he or she is capable of"). See G. L. c. 208, § 53(f ) ("In determining the incomes of parties with respect to the issue of alimony, the court may attribute income to a party who is unemployed or underemployed"). In so doing, "a judge should determine by specific and detailed findings of fact whether an individual will be able to earn additional income with reasonable effort before attributing income." Wasson v. Wasson, 81 Mass. App. Ct. 574, 580-581 (2012), quoting from Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 291 (1996).
Here, the judge provided detailed findings as to Jeffrey's income history, the retention of significant assets, the fact that he had no debt, and that there had been virtually no change in his lifestyle, despite his claim to have little or no income in the two years prior to trial. She expressly attributed that to the fact that Jeffrey's present wife, as he testified, is paying all of their household expenses during his unemployment.[7] It is clear from the judge's findings that Jeffrey's present wife's income was not directly considered in the alimony award calculation, as Jeffrey argues; instead, the judge focused on the impact of her income in allowing Jeffrey to "seek only limited employment" and enabling him to continue to pay his existing $224 weekly obligation despite having no claimed income and without depleting his significant assets, incurring debt, or prompting a change in his lifestyle.
In addition, in her findings, while the judge credited Jeffrey's efforts to obtain employment similar to his prior jobs, she noted that "he has been recruited to pursue applications in other fields and has rejected those opportunities .... The Court [found] it unreasonable for [Jeffrey], who has the responsibility to support [Joan,] to remain unemployed, in hopes of securing a position as a Vice President of Sales when other positions, for which he is qualified[,] have been and are available to him."
In light of these facts, we conclude that the $66,500 in income attributed to Jeffrey with respect to modifying the existing alimony order was reasonable and is supported by the findings and the trial record.[8] Vedensky v. Vedensky, 86 Mass. App. Ct. 768, 777 (2014). Cf. Zeghibe v. Zeghibe, 82 Mass. App. Ct. 614, 620-621 (2012) (income derived from withdrawal of funds from IRA account awarded to husband as part of division of martial assets not attributable as income in calculating alimony).
Based on the foregoing, we vacate the modification judgment dated August 3, 2015, and remand the matter to the Probate and Family Court to determine whether, in light of George v. George, 476 Mass. 65 (2016), a modification of the alimony order is appropriate, and if so, to determine the amount and duration of such modification.[9]
So ordered.
Vacated and remanded.

Because they share a last name, we refer to the parties by their first names.

The divorce judgment was first modified in late 2004, reducing, by stipulation, Jeffrey's child support and alimony obligations due to his unemployment (his monthly alimony payment was reduced by $330 to $1,620). It was again modified by stipulation in 2012, further reducing Jeffrey's child support obligation, based largely on the newly updated child support guidelines. As a result of the second modification judgment, Jeffrey was obligated to pay $600 per month in child support until the emancipation of the younger child, and he was responsible for that child's State college costs. The issue of a $6,000 retroactive child support overpayment was deferred. Jeffrey's alimony obligation did not change.

In arriving at this income amount, it appears that the judge considered Jeffrey's reported income of $45,000, and the fact that he received no income in 2015, but continued to pay his $224 weekly alimony obligation while increasing the value of his significant assets, incurring no debt, and retaining a balance of more than $6,000 (his half) in the checking account held jointly with his present wife.

The court found the analysis "flawed in two respects. First, there was nothing in the [parties'] agreed statement of facts to support this finding. Second, this logic might well prevent nearly all payor spouses with alimony obligations predating the act from ever gaining the benefit of the act's durational limits, because recipient spouses could argue that, had they known that their alimony payments would be affected by the act, they would have negotiated their separation agreement differently." Id. at 70.

The factors are: "(1) advanced age; chronic illness; or unusual health circumstances of either party; (2) tax considerations applicable to the parties; (3) whether the payor spouse is providing health insurance and the cost of health insurance for the recipient spouse; (4) whether the payor spouse has been ordered to secure life insurance for the benefit of the recipient spouse and the cost of such insurance; (5) sources and amounts of unearned income, including capital gains, interest and dividends, annuity and investment income from assets that were not allocated in the parties divorce; (6) significant premarital cohabitation that included economic partnership or marital separation of significant duration, each of which the court may consider in determining the length of the marriage; (7) a party's inability to provide for that party's own support by reason of physical or mental abuse by the payor; (8) a party's inability to provide for that party's own support by reason of that party's deficiency of property, maintenance or employment opportunity; and (9) upon written findings, any other factor that the court deems relevant and material." G. L. c. 208, § 53(e )(1)-(9).

The judge found that Jeffrey's claimed weekly expenses appeared inaccurate; for example, he included "$259 per week for motor vehicle expenses, yet he owns no vehicle," and "reported numerous expenses for rent, insurance, repairs, etc., for a home owned by his present wife."

Jeffrey's argument that the judge failed to include Joan's cohabitation as a basis for future termination of alimony is waived, as he failed to raise this issue in his complaint in support of his asserted changed circumstances warranting modification of the existing alimony order. See Chin v. Merriot, 470 Mass. 527, 528 (2015) ("cohabitation alone is a basis for termination of alimony under G. L. c. 208, § 49 [d ]"). Notably, the judge acknowledged that Joan asserted in her counterclaim that she is not cohabitating.

Joan's motion for appellate attorney's fees is denied.