The former husband (husband) appeals from a Probate and Family Court further amended judgment of divorce nisi (further amended judgment) dated August 30, 2017, and judgment of contempt dated July 5, 2017. He challenges the further amended judgment's attribution of income to him in connection with child support, property division, award of sole legal and physical custody of the parties' three children to the former wife (wife), and award of $ 100,000 in attorney's fees to the wife. We vacate the further amended judgment in part and remand for further proceedings consistent with this memorandum and order.
1. Attribution of income. The judge made the following findings pertaining to the husband's work history. From May of 2006 to March of 2009, the husband worked as a portfolio manager and equity analyst for Fidelity Investments (Fidelity), earning approximately $ 600,000 per year (comprised of a $ 220,000 base salary and bonuses). In December of 2010, after being unemployed since March of 2009, the husband accepted a director of equity research position with Knight Capital (Knight), earning approximately $ 500,000 per year (comprised of a $ 200,000 base salary and bonuses). In August of 2013, after being laid off by Knight two months earlier, the husband accepted a senior equity analyst position with Baird Kailash (Baird), earning a $ 125,000 base salary with potential bonuses up to 125 percent. His total income in 2014 was $ 179,560. In June of 2016, shortly before the end of trial, the husband was laid off from Baird.
In concluding that attribution of income was warranted, the judge found that the husband had "not made reasonable efforts to earn an income commensurate with his education, skills, employment history and prior earning level" since serving the complaint for divorce on the wife in May of 2013. Specifically, the judge found the husband capable of earning $ 400,000 per year based on his "compensation history," "outstanding credentials," and "promising employability." Given the husband's recent layoff from Baird, however, and his "period of prolonged unemployment during the marriage," the judge attributed to him an annual income of $ 250,000 "while [he] is unemployed" and ordered him to pay weekly child support of $ 1,029.
The husband claims that it was an abuse of discretion to attribute income to him because he had recently been laid off and there was insufficient evidence of readily available positions at the attributed income level. We agree.[2] When determining a party's income for purposes of setting a child support order, "[i]n the proper circumstances, '[a] judge is not limited to a party's actual earnings but may ... consider potential earning capacity.' " C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 152 (2008), quoting Heins v. Ledis, 422 Mass. 477, 485 (1996). "The child support guidelines allow a judge to attribute income to a party when a finding is made that the party is earning less than he or she could through reasonable efforts." Ulin v. Polansky, 83 Mass. App. Ct. 303, 306 (2013). Before attributing income, however, the judge must "consider all relevant factors including without limitation the education, training, ... past employment history of the party, and the availability of employment at the attributed income level." Massachusetts Child Support Guidelines § I.E (2013) (Guidelines).
Here, in finding the husband capable of earning $ 400,000 per year and then attributing an annual income of $ 250,000 to him "while [he] is unemployed," the judge credited the testimony of the wife's vocational expert that the husband was a "stellar candidate" for a director-level equity analyst position in Boston, with the yearly salary range for such a position typically falling between $ 400,000 and $ 750,000. The judge also credited the expert's opinion that the husband's Baird compensation was too low in light of his qualifications and was more in line with a salary offered to a recent Harvard graduate. Conspicuously absent from the expert's testimony, however, is any indication that the husband was overqualified for his position at Baird.[3] See Emery v. Sturtevant, 91 Mass. App. Ct. 502, 512 (2017) (reversing income attribution to husband who accepted substantially lower-paying position "commensurate with his training and experience" after extensive job search). Moreover, the expert testified that the type of upper-level equity analyst position appropriate for the husband is somewhat rare, admitting that there were no open positions at the time of trial and that in such a "competitive field" he "can't predict when" one might "come up."[4] The relative scarcity of these positions is underscored by what the judge characterized as the husband's "period of prolonged unemployment during the marriage."
Thus, though we see no error in the judge's determination that the husband is "eminently" qualified for a director-level equity analyst position earning upwards of $ 400,000 per year, it is unclear from this record if and when such a position will become available. The timing of the husband's layoff by Baird, shortly before trial ended, further muddies the waters. See Flaherty v. Flaherty, 40 Mass. App. Ct. 289, 290 (1996) (reversing attribution of income to husband who was recently laid off and "was readying himself to seek new employment"). Though the judge reduced the husband's attributed income to $ 250,000 in light of his sudden unemployment, the attribution was ultimately based on the judge's subsidiary findings regarding the husband's ability to secure a salary of at least $ 400,000. Furthermore, there was no evidence that there were available positions even at the $ 250,000 level when the husband was laid off from Baird, or that he had a meaningful opportunity to conduct a job search prior to the close of evidence. In these circumstances, while the judge "was not required to point to a specific position or job opening" when attributing income, C.D.L., 72 Mass. App. Ct. at 157, we do not think that the evidence adequately demonstrates the "availability of employment at the attributed income level." Guidelines § I.E. See P.F. v. Department of Revenue, 90 Mass. App. Ct. 707, 711 (2016) ("relevant inquiry for attribution of income is ... whether the payor is presently able to obtain employment through 'reasonable efforts' " [emphasis added] ). We therefore must remand for further findings as to whether the husband exercised reasonable efforts, since his layoff from Baird, to secure employment commensurate with his education, training, and work history. See Emery, 91 Mass. App. Ct. at 511 ("The reasonable efforts inquiry is critical, and is generally the determining factor in whether to affirm the attribution of income to a party based on his prior earning capacity").
2. Property division. The husband argues that the judge improperly excluded from the asset division the wife's interests in her parents' estate and a life insurance policy insuring her father, and failed to properly account for a portion of the marital funds advances to the wife during the pendency of the divorce proceedings. "In making an equitable division of the parties' property, the judge had available for distribution 'all or any part of the estate of the other.' " Heins, 422 Mass. at 483-484, quoting G. L. c. 208, § 34. "We review the judge's findings to determine whether she considered all the relevant factors under G. L. c. 208, § 34, and whether she relied on any irrelevant factors." Zaleski v. Zaleski, 469 Mass. 230, 245 (2014). "We will not reverse a judgment with respect to property division unless it is 'plainly wrong and excessive.' " Id., quoting Baccanti v. Morton, 434 Mass. 787, 793 (2001).
The judge excluded the wife's potential inheritance from her parents on the ground that it was "too speculative to constitute anything more than an expectancy," as the wife "has no right to demand a present distribution and her parents could change their estate plan at any time." The judge instead considered the wife's potential inheritance "in determining [her] future ability to acquire additional assets" under G. L. c. 208, § 34. This was proper. Though a judge has broad discretion to divide assets "whenever and however acquired," Rice v. Rice, 372 Mass. 398, 400 (1977), an expectancy (such as a future inheritance) is generally deemed too speculative to be included in the marital estate and is thus appropriately considered under the § 34 criterion of "opportunity ... for future acquisition of capital assets and income." Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 106 (2016), quoting G. L. c. 208, § 34. See Williams v. Massa, 431 Mass. 619, 628-629 (2000) ; Davidson v. Davidson, 19 Mass. App. Ct. 364, 374-375 (1985).
The husband argues in the alternative that the judge did not assign enough weight to the wife's expected inheritance when granting the husband only a slightly larger share of the marital assets. We disagree. The weight to be given to a particular § 34 factor is committed to the judge's sound discretion. See Denninger v. Denninger, 34 Mass. App. Ct. 429, 430 (1993). The judge properly weighed the wife's expected inheritance against the husband's superior earning potential.[5] In addition, the judge declined to award alimony to the wife, despite the husband's superior earning potential, and noted that the expected inheritance would likely reduce any future alimony award. See Casey v. Casey, 79 Mass. App. Ct. 623, 630 (2011), quoting Andrews v. Andrews, 27 Mass. App. Ct. 759, 761 (1989) ("Alimony and equitable division are interrelated remedies"). We see no abuse of discretion in the judge's ruling.
In contrast, the judge's stated basis for excluding the wife's interest in her father's life insurance policy was erroneous in part. The judge found it appropriate to exclude the policy "particularly" given the "[w]ife's lack of title." The wife concedes that this was clear error, as the evidence showed that she coowns the policy with her sister. It also appears that the wife used marital funds to pay the policy premiums. The judge thus erred to the extent that she excluded the wife's interest in the policy based on her purported lack of title. See Heins, 422 Mass. at 484 ("A party's 'estate' includes all property to which a party holds title, however acquired"). As we are unable to discern whether the judge would have reached the same result if not for the error, remand is required on this issue.
Turning to whether the judge incorrectly accounted for the advances received by the wife during the pendency of the divorce proceedings, we conclude that remand is also required on this issue. In the further amended judgment, the judge accounted for one $ 75,000 advance received by the wife. The husband asserts that the wife received two $ 75,000 advances, as reflected by two separate orders (issued in June and August of 2014), each authorizing the wife to withdraw $ 75,000 from the parties' joint accounts for counsel fees. The wife asserts on the other hand that the second order merely released the funds previously authorized by the first order and did not actually result in a second advance. The record before us is unclear, and the judge's findings do not resolve the ambiguity. We therefore remand for clarification.
3. Custody. The husband contends that the judge made erroneous and insufficient findings in awarding sole legal and physical custody of the three children to the wife and ignored evidence of her alleged domestic violence against the husband and the children. We review custody determinations for abuse of discretion. See Schechter v. Schechter, 88 Mass. App. Ct. 239, 245 (2015). "In custody matters, the touchstone inquiry [is] ... what is 'best for the child.' " Hunter v. Rose, 463 Mass. 488, 494 (2012), quoting Custody of Kali, 439 Mass. 834, 840 (2003). "The determination of which parent will promote a child's best interests rests within the discretion of the judge ... [whose] findings ... 'must stand unless they are plainly wrong.' " Hunter, 463 Mass. at 494, quoting Custody of Kali, 439 Mass. at 845. "Determining what parenting and living arrangements will be in a child's best interests 'presents the trial judge "with a classic example of a discretionary decision." ' " Smith v. McDonald, 458 Mass. 540, 547 (2010), quoting Youmans v. Ramos, 429 Mass. 774, 787 (1999).
Here, the judge found that "joint custody is not feasible ... due to an enduring failure of the parties to communicate effectively and work cooperatively regarding the children.... [T]he parties have been unable to come to a consensus on nearly every contested decision affecting the children, ranging from medical care to afterschool activities." See Carr v. Carr, 44 Mass. App. Ct. 924, 925 (1998) ("Where the judge ... [finds] that the relationship of the parties has been dysfunctional, virtually nonexistent, and one of continuous conflict, ... custody should be awarded to only one parent"). The judge also found that, "[b]ased on the inability of the parties to communicate effectively, joint legal and joint physical custody is not in the children's best interests"; rather, their best interests would be served by the wife's "continu[ing in her] role as the primary caretaker." See Custody of Kali, 439 Mass. at 843 ("it is ordinarily in the child's best interests to maintain" existing parenting arrangement if it "is satisfactory and is reasonably capable of preservation"). In addition, the judge found that the wife "has demonstrated a willingness to be respectful and supportive of [the h]usband's active involvement in the children's lives, which has not been reciprocated by [him]." See Hunter, 463 Mass. at 495-496 (affirming award of sole custody to only parent willing to foster child's relationship with other parent).
The husband challenges these findings, claiming they are not supported by the evidence. But the findings were based largely on the judge's assessment of the credibility of several witnesses, including the parties, the guardian ad litem (GAL), and the parenting coordinator.[6] As there is nothing in the record to show that the judge's credibility determinations were "plainly wrong," we decline to disturb them. Zaleski, 469 Mass. at 237, quoting Felton v. Felton, 383 Mass. 232, 239 (1981). Indeed, "[i]n this situation, '[t]he opportunity which the judge had to observe and appraise both parents is particularly important.' " Bak v. Bak, 24 Mass. App. Ct. 608, 616 (1987), quoting Stevens v. Stevens, 337 Mass. 625, 627 (1958).
The husband further argues that the judge improperly rejected the GAL's recommendation for joint legal custody without providing an adequate basis for doing so.[7] But the judge was not required to adopt the GAL's recommendation. See Pizzino v. Miller, 67 Mass. App. Ct. 865, 876 (2006). The judge's findings regarding the parties' inability to agree on even the smallest of issues provide more than a sufficient basis for declining to award shared legal custody. See Rolde v. Rolde, 12 Mass. App. Ct. 398, 404 (1981) ("in order for joint custody or shared responsibility to work, both parents must be able mutually 'to agree on the basic issues in child rearing and want to cooperate in making decisions for [their] children' ").
We are likewise unpersuaded by the husband's contention that the judge failed to properly consider evidence of the wife's alleged domestic abuse, in violation of G. L. c. 208, § 31A. Though the husband asserts that the judge "block[ed the] testimony of rebuttal witnesses" prepared to testify regarding the abuse allegations, the record does not support the husband's claim.[8] Furthermore, the judge did consider the abuse allegations raised by the husband, but did not find them credible. The judge credited the GAL's testimony that she investigated certain abuse allegations raised by the husband but ultimately determined that there were no concerns regarding the children's safety while they are in the wife's care.[9] We discern no abuse of discretion with regard to the award of sole legal and physical custody to the wife.
4. Attorney's fees. A judge has considerable discretion to award attorney's fees in a divorce case. See Moriarty v. Stone, 41 Mass. App. Ct. 151, 159 (1996) ; G. L. c. 208, § 38. "The factors relevant to an exercise of judicial discretion in determining an award of attorney's fees in a case such as this include 'the ability of the wife's counsel, the work performed, the results secured, the time spent, the hourly rates, the existence of contemporaneous time records, the financial positions of the parties, and the husband's obstructionist conduct which prolonged the proceedings.' " Schechter, 88 Mass. App. Ct. at 260, quoting Cooper v. Cooper, 62 Mass. App. Ct. 130, 141 (2004). "As long as the amount awarded is not incommensurate with an objective evaluation of the services performed, ... '[t]he award of such costs generally rests in sound judicial discretion ... and ordinarily ought not to be disturbed.' " Ross v. Ross, 385 Mass. 30, 38-39 (1982), quoting Smith v. Smith, 361 Mass. 733, 738 (1972).
The judge presided over several years of litigation in this case, including a nine-day trial, and was "intimately familiar" with the issues, the ability of the wife's counsel, the parties' conduct during the proceedings, and their respective financial positions. Moriarty, 41 Mass. App. Ct. at 159. The judge's decision to award the wife $ 100,000 in fees was "due primarily to [the h]usband's overzealous posture during the discovery phase and his tendency to perseverate over minor issues throughout these proceedings and at trial, which combined to unnecessarily prolong this litigation." The judge found that the nine-day trial (originally scheduled as a two-day trial) was "excessive ... [given] the issues in dispute" and that "the length of the time for the case to be tried was exacerbated by [the h]usband's actions."
Furthermore, the judge found the fee award to be warranted given the contempt adjudication (on "[c]omplaint for [c]ontempt filed April 7, 2014") against the husband. In particular, the judge found the husband in contempt for utilizing $ 900,000 in marital funds to purchase a home, without obtaining the wife's permission or leave of court. Though the husband contends that the judge's findings relative to the contempt and his protraction of the litigation were clearly erroneous, we see nothing in the record that would compel us to disturb those findings, especially since they were rooted largely in the judge's own observation of the husband's conduct during the litigation. See Salten v. Ackerman, 64 Mass. App. Ct. 868, 875 (2005) ("trial judge [is] in the best position to determine whether the husband prolonged the case").[10] The judge's basis for awarding fees to the wife was sound. See Hunter, 463 Mass. at 502 ("Fee awards are proper given a party's discovery abuses, obstructionist conduct, and delay tactics").
We also reject the husband's argument that the judge's findings fail to reflect appropriate consideration of the reasonableness of the award of $ 100,000 in attorney's fees. The judge considered, among other things, the $ 250,000 in fees paid by the husband to his various attorneys, the "scope and quality" of the representation provided by the wife's counsel, the $ 300 hourly rate charged by the wife's counsel (which the judge found to be "consistent with the market rate for family law practitioners of comparable skill and experience in eastern Massachusetts"), and the husband's clear ability to pay the fee award "given his current cash assets." Moreover, the judge declined to award the entire $ 160,000 in fees sought by the wife, concluding that "$ 100,000 represents a fair assessment ... considering the expense necessary to litigate this matter in a reasonable manner." These findings were well within the judge's discretion. See Schechter, 88 Mass. App. Ct. at 260 (affirming fee award to mother where "judge was intimately familiar with the parties, the father's superior financial position, the nature of the case, and the submissions of the parties" and "made specific findings that the father needlessly complicated the mother's efforts to discover the facts and severely and unnecessarily increased the amount of work performed by the mother's attorney").
Conclusion. So much of the further amended judgment as pertains to property division and to attribution of income is vacated, and the case is remanded for further proceedings consistent with this memorandum and order. In all other respects, the further amended judgment is affirmed. The judgment of contempt dated July 5, 2017, is affirmed.[11]
So ordered.
affirmed in part; vacated in part and remanded

We reject the husband's argument that, as a matter of law, income cannot be attributed to a party whose career change was "not voluntary." "Regardless of the circumstances surrounding the husband's [departure from his employment], the judge was still required to consider whether ... the husband could earn more with reasonable effort." Emery v. Sturtevant, 91 Mass. App. Ct. 502, 511 (2017).

To the contrary, the expert's testimony suggests that the husband's role at Baird was appropriate in light of his education, training, and work history.

The expert testified that only one director-level position typically exists in a given company and that, in the past two years, he had received only "six requests to produce candidates to fill automotive equity analyst positions matching [the h]usband's hypothetical candidate profile."

Notwithstanding our ruling on the judge's attribution of income to the husband, we discern no error in the judge's finding that the husband's future earning potential is superior to that of the wife, given his education, work experience, and earning history throughout the marriage.

For example, the judge credited the parenting coordinator's testimony that "the parties consistently relied on him to arbitrate nearly every contested decision" and "[s]imply enrolling the children in swim lessons required a court order."

It is not wholly apparent from the record before us whether the GAL did in fact recommend joint legal custody. The husband failed to include a copy of the GAL's report in the record appendix, and the only record citation he provides in his brief does not clearly establish that the GAL recommended joint legal custody.

The judge placed two former nannies on standby as rebuttal witnesses. On the last day of trial, the husband never renewed his request to call rebuttal witnesses. Thus, as conceded by the husband at oral argument, there is no clear indication in the record that the judge prevented the nannies from testifying.

Because the husband did not include the GAL report in the record appendix, we are unable to assess his claim that the GAL did not conduct a thorough investigation. See Chokel v. Genzyme Corp., 449 Mass. 272, 279 (2007). We therefore accept the judge's finding that "[t]he GAL investigation was thoroughly conducted," as the GAL "properly assessed when certain issues needed further investigation and when they did not."

We see no merit to the husband's claim that the judge abused her discretion by not conducting an evidentiary hearing. See Robbins v. Robbins, 19 Mass. App. Ct. 538, 543 n.10 (1985) ("where the judge evinces firsthand knowledge of the work performed and of going rates, an evidentiary hearing may not be necessary").

The wife's request for "additional appellate fees" is denied.